Hillsborough, }
Feb. 6, 1923. }

## NEW HAMPSHIRE WHOLESALE FRUIT CO.

*v.*

## JOHN BARTON PAINE, *Agent.*

If the value of goods is merely impaired by injury in the hands of the carrier or by delay of the carrier, the consignee is bound to receive the goods and his right of action is limited to the impairment of value due to the delay in carriage or injury to the goods.

In order to charge a principal for the acts of his agent, in the absence of proof of express authority to act, it must appear that the principal has so conducted as to lead to the reasonable belief that he had given the agent the necessary power, and there must be evidence that the situation in which the agent was placed was likely to arise in the general course of the business he was set to do, and that the means taken by him were such as might ordinarily be employed.

The implied authority of a freight adjuster is limited to the ordinary situations that might be expected to arise and does not extend to the unusual situation created by the consignee's refusal to accept goods impaired by injury in the hands of the carrier or by delay of the carrier.

It is not a matter of common knowledge that an adjuster has authority to make a contract acknowledging liability, as an independent agreement not accompanied by any settlement of the amount of loss.

ASSUMPSIT. The plaintiff's evidence tended to prove that while the defendant was operating the Boston & Maine Railroad under federal authority, a car-load of melons consigned to the plaintiff arrived at the Manchester station in a damaged condition. The plaintiff gave checks in payment of the draft attached to the bill of lading and of the freight bill. Upon discovery of the condition of the melons, it stopped payment on the checks and refused to receive or care for the goods. The plaintiff's attorney conferred with the freight cashier at the defendant's station, but knew that

the defendant had at Manchester a general freight agent, whose authority was superior to that of the cashier. The cashier told the attorney that the defendant's adjuster would be in Manchester that afternoon. Thereafter the cashier told the attorney that the adjuster had directed that the attorney be told to have his client market the merchantable melons, and that the defendant would pay the loss. An officer of the plaintiff company was at the freight station that afternoon and testified that some person who said he was an adjuster told the witness to do the best he could with the melons and "the difference the company would stand for."

The cashier was called as a witness by the plaintiff, and denied that he had any authority to act in the matter, or that he was given any message for the plaintiff by the adjuster, or that he ever transmitted such message.

The action is to recover upon the alleged promise to pay the loss. At the close of the plaintiff's evidence a nonsuit was ordered by *Allen,* J., who transferred the case from the January term, 1922, of the superior court, upon the plaintiff's exception.

*James A. Broderick* and *Irving E. Forbes* (*Mr. Forbes* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

Peaslee, J. The question how far the defendant is bound by the acts of the freight cashier, need not be considered. Assuming that the defendant put the cashier in a position of apparent authority to direct the plaintiff to the proper authorities to deal with the usual business of the defendant, the plaintiff's case fails for the reasons hereinafter stated.

The question presented is whether an adjuster has implied authority to make the contract here set up. In order to charge a principal for the acts of his agent, in the absence of proof of express authority to act, it must appear that the principal has so conducted as to lead to the reasonable belief that he had given the agent the necessary power. *Atto v. Saunders,* 77 N. H. 527; *Davison v. Parks,* 79 N. H. 262. To create a situation that is within this rule, there must be evidence that the one in which the agent was placed was likely to arise in the general course of the business he was set to do, and that the means taken by him were such as might ordinarily be employed. In the present case the plaintiff's proof falls short in

each respect. The situation was extraordinary, and the action alleged to have been taken was unusual.

There was no evidence, aside from the title stated by the freight cashier, that the person called an adjuster had any authority. His authority to act was therefore limited by the ordinary situations that might be expected to arise. The plaintiff's argument upon this point is based upon the erroneous idea that the position taken by it, at the time the goods arrived, was not an unusual one. The plaintiff, upon finding that its goods were damaged, refused to receive them or to pay the freight charges.

"A carrier having goods in possession for transportation acquires no title to them. As the goods remain the property of the owner, his right of action against the carrier is for the entire value of the goods if lost or made entirely worthless by the carrier's default; and in case of destruction of value the recovery is not affected by the owner's acceptance or his refusal to accept the goods. On the other hand, if the value is merely impaired by actual injury in the hands of the carrier, or by delay in the carrier, the consignee is bound to receive the goods; and his right of action is limited to the impairment of value due to delay in carriage or injury to the goods." *McGrath* v. *Railway*, 91 S. C. 552, 554. The duty to receive the goods, although damaged, has been recognized in this state. *Hackett* v. *Railroad*, 35 N. H. 390, 401.

As the plaintiff's case rests upon implications to be drawn from usual and ordinary occurrences, it cannot prevail merely upon evidence that it presented a novel and therefore not to be expected claim of right. There was no attempt to adjust the plaintiff's loss. All that was done, upon the plaintiff's contention, was that the defendant admitted liability for the loss, whatever it might be. The acknowledgment of liability, or promise to pay, is alleged to have been made in consideration of the plaintiff's undertaking to perform its legal duty to pay the freight, remove the property and use reasonable diligence to get what it could out of it. The plaintiff having refused to do these things under a claim of right, its abandonment of that claim may have been a sufficient consideration to support an agreement by the defendant that he acknowledged liability. *Phelan* v. *Adam*, 79 N. H. 348, 350, and cases cited. But the question here is one of the implied authority of an agent to bind his principal, and the unusual character of the act is to be considered upon that issue.

The situation arose from the plaintiff's unjustifiable claim that it

had a legal right to refuse to receive and care for the damaged goods. It does not appear that such legally unwarranted claims are so frequently made that the defendant would be supposed to have an agent at hand to deal with the subject on the spot. The legal and orderly proceeding was for the plaintiff to take its goods and make its claim for damages in the usual way. Having taken a position not warranted by law, it cannot stand upon the proposition that it reasonably supposed that the men set to do the ordinary business of the defendant were authorized to treat upon the subject. If the defendant is to be charged with the acts of his alleged agents under such circumstances, it can only be upon proof of the agent's authority to deal with the extraordinary situation.

The question being whether the defendant ought to have understood that the plaintiff would understand that the adjuster had power to act for the defendant in this way (*Davison* v. *Parks, supra,* 264), the unusual character of the claim presented and of the agreement alleged to have been made by the agent furnish no ground for a finding favorable to the plaintiff. It is not a matter of common knowledge that an adjuster has authority to make a contract acknowledging liability, as an independent agreement not accompanied by any settlement of the amount of loss. What the plaintiff relies upon is not an adjustment of its claim, but an acknowledgment of liability therefor. The transaction was "extraordinary and unusual." In such a situation further proof of the agent's authority is required. *Bohanan* v. *Railroad,* 70 N. H. 526, 528.

*Exception overruled.*

YOUNG, J., was absent: SNOW, J., did not sit: the others concurred.