## ORVIS et al. v. GEORGE et al.

### No. 5862.

Circuit Court of Appeals, Fifth Circuit.

March 23, 1931.

Raymond M. Myers, of Wichita Falls, Tex. (Wm. H. Jack, Jr., and Saner, Saner & Jack, all of Dallas, Tex., on the brief), for appellants.

Arch Dawson and John C. Kay, both of Wichita Falls, Tex. (John C. Kay, of Wichita Falls, Tex., on the brief), for appellees.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

This is an action at law to recover the sum of $5,206.97, alleged to be due by the defendants, as partners in the Birk-George Gin Company, and growing out of the purchase and sale of cotton for future delivery upon the New York Cotton Exchange. Plaintiffs alleged that the transactions were consummated on the order and direction of Norman Bayless, "one of the partners and as agent for the other defendants, W. F. George, C. Birk and C. E. Birk," operating under the firm name of Birk-George Gin Company, in conformity with the rules of the New York Cotton Exchange and the United States Cotton Futures Act, approved August 11, 1916 (26 USCA §§ 731–750, 752). In the alternative, it was alleged that, if plaintiffs were mistaken as to Bayless being a member of said firm, then he was the general manager in com-

plete charge of the business of defendants, with full authority to act in such matters; or, if not specifically empowered so to do, was possessed of implied authority therefor, having been permitted to conduct said operations over a long period of time, with the full knowledge and consent of the other defendants; that plaintiffs in good faith relied upon said apparent authority, after careful investigation, and that defendants were estopped by their conduct to deny that Bayless had the power to bind them.

Defendants filed demurrers and answers, denying in the main the allegations of the petition, and C. Birk and George, by reconvention or cross-action, claimed the sum of $2,000, which they alleged had been wrongfully received by the plaintiffs in connivance with Bayless.

At the conclusion of the trial the court directed a verdict for defendants on the main demand, as well as for plaintiffs upon the cross-claim. Plaintiffs alone have appealed. The issues raised by the assignments of error are stated by the appellant as follows:

"(1) Whether or not Bayless as manager or agent of the Birk-George Gin Company was acting within the scope of his apparent authority when he purchased and sold for the Birk-George Gin Company cotton for future delivery?"

"(2) Whether or not C. Birk and W. F. George held Bayless out as having the requisite authority to so purchase and sell?"

"(3) Whether or not the plaintiffs knew the facts constituting such holding out of Bayless?"

"(4) Whether or not plaintiffs made a reasonable investigation to ascertain the facts with reference to the authority of Bayless?"

"(5) Whether or not plaintiffs relied on this apparent authority of Bayless?"

"(6) Whether or not the plaintiffs acted on the apparent authority of Bayless in good faith?"

"(7) Whether or not plaintiffs were injured by reliance on the apparent authority of Bayless?"

"(8) Whether or not C. Birk and W. F. George, by the exercise of reasonable caution, would have discovered that their agent Bayless had assumed to do that which they did not intend that he should do?"

"(9) Were the plaintiffs injured by lack of reasonable caution, if any, on the part of C. Birk and W. F. George?"

"(10) Whether or not Bayless as manager of the Birk-George Gin Company had im-plied authority to purchase and sell cotton for future delivery?"

"(11) Whether or not it is usual or customary for a gin company such as the Birk-George Gin Company to buy or sell cotton for future delivery?"

"(12) Whether or not Bayless was a partner in the firm of Birk-George Gin Company."

The assignments of error complain of the direction of the verdict as to C. Birk, W. F. George, and C. E. Birk, but do not mention Norman Bayless, so we take it no relief is sought as to the latter.

Of course the direction of a verdict requires that we examine the evidence brought up by the bill of exceptions, to see if there is any substantial evidence, which, if believed, would support a recovery by plaintiffs. The undisputed facts are that the Birk-George Gin Company was engaged in the ginning of cotton, and as an incident thereto would buy from its customers spot cotton, particularly round bales which it was equipped to produce, seed cotton, and cottonseed; that occasionally it would also buy what was termed square bales. However, it was not engaged in the business of buying and selling cotton generally or in the future market. The business was owned by C. Birk, a man about eighty-five years old, and by W. F. George. The former, through his son, C. E. Birk, employed Norman Bayless to manage the gin at a salary of $150 a month. There was some discussion between C. E. Birk and Bayless about the latter eventually acquiring an interest in the business if it made money, which it did not, but, according to the owners, he never at any time had any actual interest in it. Neither of the two owners knew anything about the transactions had by plaintiffs with Bayless purporting to represent the Birk-George Gin Company until after they had been completed and the alleged indebtedness was due. They never at any time personally had any communication with the plaintiffs or their agents, and, if they are to be bound, that liability must arise through the acts and doings of Bayless.

The record shows that all communications between plaintiff and the gin company were had with Bayless. Before opening the account a representative of the plaintiff was sent to Iowa Park, Tex., where the gin was operated, as the result of correspondence between them and Bayless purporting to act for the gin company. This representative saw no one but Bayless, who stated he was the general manager, and with whom was discussed the situation generally, and was in-

formed by Bayless that he was a member of the firm. He never at any time saw or talked to Birk, Sr., or George. He says that he discussed the matter of the account with C. E. Birk (who as above stated was not a member of the firm, but acted for his father in looking after matters generally), but we think the evidence shows fairly this was after the indebtedness had accrued. It is true that the defendants left the management of the gin business to Bayless, and, during the nine months covered by these transactions, did not examine the books or make any other investigation that might have disclosed what Bayless was doing. However, according to the bookkeeper, the only record which was made was the entry of a check for $5,000 issued in January, 1929, to the plaintiffs, by Bayless, and the subsequent entry during the same month of one from them in favor of Birk-George Gin Company for $3,000, both of which were, under the instructions of Bayless, placed upon the regular account for purchase and sale of spot cotton. Bayless' negotiations with the plaintiffs were opened in July, and the visit of Boatwright, their agent in Iowa Park, was made in the same month. The first transaction was the purchase of one hundred bales of cotton on August 8th, and the next a like quantity on October 17th; then followed another in that month, with five in October, two of which were for 1,000 bales each. These purchases were continued until April 29, 1929. Corresponding sales were made at later dates over the same period. All of the correspondence, telegrams, etc., were handled by Bayless, and, as above stated, no one else except the bookkeeper appears to have known anything about the matter until the indebtedness had been incurred.

We think it beyond question that there was no express authority on the part of Bayless to trade in cotton futures as was done, and the only thing from which implied power could be assumed was the fact that he was in charge as manager, plus the statement of one of plaintiffs' witnesses, Harry A. Levine, that he was a broker on the New York Cotton Exchange, and "my firm is accustomed to dealing with gin companies over the country. It is usual and customary for a gin company to buy and sell cotton for future delivery,— it is frequently done." The plaintiffs satisfied themselves as to the financial responsibility of the gin company and then extended a credit of $5,000 for the purpose of buying futures.

We agree with the court below that there was no substantial evidence tending to show that the manager of a gin, in an isolated section of the country like this one, has authority to bind it by trading in cotton futures upon the New York Cotton Exchange. Its business was that of ginning cotton, buying and selling seed cotton, cottonseed, and such of its customers' spot cotton as they were willing to sell on the ground; but there is nothing to show that it or those similarly situated ever, as an ordinary and usual part of their business, engaged in the hazardous practice of buying and selling cotton on the future market. The agent of the plaintiffs having visited the premises and seen the situation, we think they were bound by the very nature of the proposed undertaking to go further than was done and to ascertain the extent of Bayless' connection, who the others interested were, and whether or not he was authorized to transact this business. We cannot see that there was any implied authority. All representations were made by the alleged agent, which, of course, could not bind the defendants if he acted beyond the scope of his express powers, or those reasonably implied by the nature of the business.

We find no error, and the judgment is affirmed.

Affirmed.