Coös,
Feb. 2, 1932.

## PAUL WHITE *v*. BROWN COMPANY.

*Ovide J. Coulombe* (by brief and orally), for the plaintiff.

*Edmund Sullivan* and *Shurtleff & Hinkley* (*Mr. Hinkley* orally), for the defendant.

BRANCH, J. The plaintiff's brief is devoted almost wholly to an attempt to establish the proposition that "the contract made between Keenan and the plaintiff for two years' operations at $6.25 per cord could be found to come within the 'apparent scope' of Keenan's authority." It seems to be assumed without argument that if this point were established the plaintiff would be entitled to damages for breach of the alleged contract. The plaintiff here falls into a serious error. Even if Keenan's authority to make such a contract were established, a mere verbal agreement such as the plaintiff described would be invalid under the statute of frauds because, by its terms, it was "not to be performed within one year from the time of making it." P. L., c. 327, s. 2. Obviously the plaintiff cannot succeed upon the theory above set forth.

In the last seven lines of his brief the plaintiff suggests another possible ground of recovery which is not so obviously untenable, namely, that Keenan had apparent authority "to correct the error in the written contract by changing the price." In order to make out a case, however, it would not be necessary for the plaintiff to sustain the dubious claim that Keenan had authority to correct an error which concerned only the place of work by changing the price to be paid for the work. The real question presented by the record in this case, as the defendant has clearly perceived, is whether Keenan had apparent authority to release the plaintiff from the terms of the written contract, or in other words, whether Keenan had apparent authority to acknowledge on behalf of the defendant that the written contract did not embody their true agreement and that the plaintiff was not bound thereby. If the effect of the written contract could thus be avoided the plaintiff might perhaps recover upon a *quantum meruit*. We do not think, however, that any finding of apparent authority in Keenan to abrogate or modify the written agreements of the defendant could be sustained by the evidence here presented.

"In order to charge a principal for the acts of his agent, in the absence of proof of express authority to act, it must appear that the principal has so conducted [himself] as to lead to the reasonable belief that he had given the agent the necessary power." *New Hampshire &c. Co. v. Paine*, 80 N. H. 540, 541. It is, of course, equally important that the complaining party should in fact have entertained such a belief and acted upon it. *Davison v. Parks*, 79 N. H. 262, 264. Consequently little weight attaches to the general statements of the witness Gordon Brown, upon which the plaintiff strongly relies, to the effect that Keenan was "held out to the contractor as the man you

have to see to get a job from the Brown Company in the woods"; and that Keenan had charge of "seeing the contractors and letting the jobs." The decisive question is: What did the plaintiff know about Keenan's authority?

In regard to this question the testimony of the plaintiff was confused and conflicting. The assertion in the defendant's brief that "he evaded and quibbled about his knowledge" does not overstate the fact. At one time he went so far as to assert that when he took the 1927-28 contract he did not "have any reason to believe that anybody else was interested except Jim Keenan." This was a palpably false and incredible statement. Finally, however, upon his fourth recross examination he testified as follows: "Q. What did you suppose Brown signed those contracts for? A. Well, they always told me he had to sign it. Keenan done the—gave the job and had the contract made out, and Mr. Brown signed it. That's the way I understood it. Q. You understood Mr. Brown had to sign all those contracts? A. Yes, sir. Q. And there was no contract binding until he had signed them, was your understanding? A. I couldn't tell you that."

These admissions were reinforced by many other items in his testimony, notably his inadvertent concession that he knew that "whatever talk" he had "with Mr. Keenan would have to be approved by some of the Brown Company." The force of this statement was only slightly weakened by his subsequent attempt to retract it upon the ground that he had misunderstood the question. Earlier in his direct examination, before the importance of the question of Keenan's authority had become apparent, he also stated that the result of his talk with Keenan was that there was "an agreement made for a contract."

The foregoing admissions are binding upon the plaintiff (*Harlow* v. *Leclair*, 82 N. H. 506) and the conclusion is irresistible that the plaintiff knew that Keenan had no independent authority to make contracts for the defendant. No reasonable man could draw any other conclusion from the language attributed to Keenan, and repeated by the plaintiff no less than four times upon the witness stand, to the effect that "They [the Brown Company] never went back on anything I ever said yet. Whenever I made a trade they stand behind me; that's what I'm here for, to take charge of them. Don't let that worry you; go ahead and do your job and I'll see that you get settled with all right."

Being possessed of this knowledge the plaintiff had no reasonable ground for believing that Keenan had authority to take action of

equal importance by canceling a written agreement duly executed by the defendant or releasing the plaintiff from his obligations thereunder. In fact the evidence clearly indicates that Keenan did not attempt to do any such thing and the plaintiff did not suppose that he had done so. The plaintiff testified that Keenan said to him: "Cut your contract right off anyway," while at the same time he held out to him the promise of a new contract when Mr. Brown got back home. The plaintiff did as requested and accepted from the defendant, without protest, throughout the season, monthly settlements upon the basis fixed by the written contract. Any right of rescission which he may have had was thus waived (*Bechard* v. *Amey*, 82 N. H. 462, 471), and for Keenan's failure to make good his promise of a new contract the defendant is not legally liable.

The second element of the plaintiff's claim may be shortly disposed of. The second written contract contains only an estimate of the quantity of timber on the lot, and the plaintiff in his testimony referred to Keenan's statement regarding quantity as an "estimation." Of course, it could be nothing else. The proved inaccuracy of these estimates obviously will not support an action for breach of contract.

*Exceptions overruled.*

All concurred.