MICHAEL F. SULLIVAN & a.

*v.*

JOHN HANCOCK MUTUAL LIFE INSURANCE CO. ·

*Hurley & Connor (Mr. Connor orally), for the plaintiffs.*

*Wyman, Starr, Booth & Wadleigh (Mr. Ralph E. Langdell orally),* for the defendant.

MARBLE, J.   The plaintiffs rely upon a provision of the policy permitting the insurance company, on satisfactory proof of the death of the insured, to make any payment "to any person appearing to the Company to be equitably entitled thereto by reason of having incurred expense in any way on behalf of the Insured for burial or for any other purpose."   They claim the benefit of this provision by vir-

tue of an alleged representation by one Almon E. Kempton, assistant superintendent of the defendant's branch office in Manchester, that the policy was good and his assurance that their bill would be paid.

The policy expressly provides that no person except certain named officials, not including assistant superintendents, may make, alter or discharge the contract or waive forfeiture, and that no agent may bind the company by making any promise not contained in the policy.

The plaintiff Turley stated that on the day of the death of Esther M. Vaskovitch, he and one Clark, a brother of the deceased, interviewed Kempton and "told him about this girl being dead over to the county hospital and that she had an insurance policy." He testified: "Mr. Clark handed him [Kempton] the insurance policy and he opened it up . . . He told me to go ahead and take care of Mrs. Vaskovitch and the John Hancock Company would see that we got our money."

The plaintiffs claim that Kempton had apparent authority to make this promise. See P. L., c. 273, s. 19. It is not enough, however, for a third person merely to show that he has been misled by an agent's conduct. Before the principal can be bound it must appear that he "has either so conducted his business as to give third parties the right to believe that the act in question is one he has authorized his agent to do, or that it is one agents in that line of business are accustomed to do." *Davison* v. *Parks*, 79 N. H. 262, 263.

Neither of these essential elements is present in the case at bar.

The defendant's home office issued all policies and determined the validity of all claims. The branch offices solicited insurance, collected premiums, and helped beneficiaries to make out their proofs of death. Checks in settlement of claims were sent by the home office to the proper branch offices for distribution, and while it was the practice of the branch office in Manchester to cash such checks for beneficiaries and to see that undertakers' bills were paid at that time, there is no evidence that any officer or employee of the local agency had ever presumed to determine the validity of any policy or promised to pay undertakers or anyone else before the home office had authorized payment of the policy.

So far as appears, other life insurance companies did not conduct their business differently, and the plaintiffs had never had any experience from which they might reasonably conclude that local officers or agents were empowered to make any promises whatever in relation to the payment of claims. It is not a matter of common knowledge that such officers or agents ever do act as Kempton is alleged to have acted in the present case.

186

Under these circumstances the presiding justice did not err in directing a verdict for the defendant. *White* v. *Company*, 85 N. H. 389, 391; *Edelstone* v. *Company*, 84 N. H. 315, 319; *Castonguay* v. *Company*, 83 N. H. 1, 4; *Wright* v. *Railroad*, 81 N. H. 361; *New Hampshire &c. Fruit Co.* v. *Paine*, 80 N. H. 540, 541, and cases cited.

In the case of *Schwartz* v. *Company*, 82 N. H. 177, cited by the plaintiffs, the promise was made by a general agent whose "powers were coextensive with the requirements of the insurance business."

<em>Exception overruled.</em>

All concurred.

Hillsborough, }
March 7, 1933. }