## BROWNELL et al. v. TIDE WATER ASSOCIATED OIL CO.

### No. 3661.

Circuit Court of Appeals, First Circuit.

June 6, 1941.

---

Laurence I. Duncan, of Concord, N. H. (John H. Sanders, of Concord, N. H., and Harold E. Wescott, of Laconia, N. H., on the brief), for appellants.

Carl C. Jones, of Concord, N. H. (Demond, Sulloway, Piper & Jones, of Concord, N. H., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case is before this court on an appeal from a judgment for the defendant in the court below. The original action in assumpsit, seeking to recover damages for breach of an alleged contract between plaintiffs, Edgar C. Brownell and the Belknap Petroleum Corporation, hereinafter called Belknap, and defendant, was brought in the New Hampshire Superior Court but was removed by the defendant to the United States District Court for the District of New Hampshire.

The plaintiffs' declaration alleges that the defendant agreed to make a distribution storage and delivery contract, hereinafter called a commission agency agreement, with Mr. Brownell or Belknap, if Mr. Brownell would sever all connection with the Hampshire Oil Company of which he was then an officer and stockholder, and would form a new corporation to be known as the Belknap Petroleum Corporation. The commission agency agreement would make Mr. Brownell or Belknap the defendant's commission agent in the Laconia area, would place at his or its disposal the defendant's bulk distributing plant and its equipment, and would provide for the payment to Mr. Brownell or Belknap of a certain commission on all the defendant's products sold in the designated area. The declaration further alleged that the defendant agreed to lease the plaintiffs' two filling stations and purchase the plaintiffs' major equipment. The plaintiffs also alleged that relying on these promises, Mr. Brownell severed his connection with the Hampshire Oil Company, formed Belknap, made the

foregoing agreements with the defendant on September 11, 1939, and with the defendant's knowledge and consent equipped its stations to sell defendant's products and carry out the agreements. The declaration alleged the defendant failed to perform its part of the agreement. The plaintiffs claimed $50,000 damage.

The defendant answered with a general denial and a plea that the agreements alleged were unenforcible because not in writing as required by the Statute of Frauds.

The action was tried before a jury. At the close of the plaintiffs' case, the trial judge granted the defendant's motion for a directed verdict. He stated to the jury that he was satisfied that there was no actual authority in any of the individuals with whom the plaintiffs dealt to make the agreements alleged, and that any possible apparent authority was immaterial since the alleged unwritten contract was one for three years and thus unenforcible under the Statute of Frauds. From the granting of this motion and the judgment entered on the verdict found pursuant thereto, the plaintiffs have appealed.

■■ It is elementary that on an appeal from the granting of a motion for a directed verdict, the evidence must be considered in the light most favorable to the party against whom the verdict was directed. See, e.g., Flynn v. Crume, 7 Cir., 101 F.2d 661, 1939; Adams v. Boston Elevated Ry. Co., 219 Mass. 515, 107 N.E. 360, 1914. If there is no substantial evidence which, if believed, would support a recovery by the plaintiff, the direction of the verdict for the defendant must be affirmed regardless of the ground on which it was directed by the trial judge. Wise v. United States, 5 Cir., 63 F.2d 307, 1933.

The facts as they appear relevant to us may be stated as follows:

Mr. Brownell had for the ten years between 1926 to 1936 held various responsible positions with the defendant company. He had been district manager in both the Providence and Hartford areas. Among his duties had been the promotion of sales, the procuring of new dealers, and the execution of certain written contracts. In 1938, Mr. Brownell and one Mr. Wagner formed the Hampshire Oil Company, a corporation, for the sale of gasoline and other products. The shares were about equally divided between Mr. Brownell and Mr. Wagner. The company handled Sun Oil Company products, and it managed to increase its business from a small beginning to the control of many stations and dealers and the sale of about 120,000 gallons of gasoline per month.

The defendant is a competitive gasoline distributor and anxious to increase its distributive facilities. The defendant had its own bulk distributing plant in Laconia. In June, 1939, Mr. Brownell casually met Mr. Boggs, defendant's District Manager, on the street in Laconia, and a discussion was had concerning the relative merits of an independent distributorship and a commission agency relationship. In July, Mr. Boggs again discussed with Mr. Brownell the possibility of the Hampshire Oil Company becoming the commission agent for the defendant. The defendant would have received the entire gallonage of the Hampshire Oil Company, and the latter would have been able to distribute the 500,000 gallons yearly distributed from the defendant's Laconia bulk plant. This added gallonage was considered very necessary since Mr. Brownell and Mr. Wagner had long been worried about the small volume of their business. In July they had both begun to examine the feasibility of one buying the other out or making some other separation agreement.

Still later in July, Mr. Brownell went to Hartford to see Mr. Weess, a personal friend and defendant's Department Manager for the Southern New England division, soon to become Assistant Regional Manager. They discussed commission agencies in general. On July 28, Mr. Boggs again conferred with Mr. Brownell as a result of which the latter made a trip through Connecticut to gain information on commission agencies and distributorships.

On August 9, Mr. Brownell went to Boston to see Mr. Weess. He told the latter that the Hampshire Oil Company was worried about its volume and was interested in becoming the defendant's commission agent. At the conference, also attended by Mr. Boggs and Mr. Walker, the Assistant Eastern New England Manager, it was arranged that a survey would be made by the defendant to try to reconcile overlapping territory and conflicting interests. This survey was never made since Mr. Brownell and Mr. Wagner had apparently some time early in August decided to sep-

arate, and Mr. Brownell could no longer bargain for all the business of the Hampshire Oil Company.

On August 5, Mr. Brownell told Mr. Boggs of the possibility of a separation between him and Mr. Wagner, but he did not inform any higher official of the defendant company until August 9. Mr. Brownell gave contradictory testimony on this point since he also testified that he first informed Mr. Walker of the possibility of separation on August 16, the day on which he alleges that an offer to make him the defendant's commission agent was made.

On August 14, Mr. Brownell discussed with Mr. Boggs a possible separation plan between Mr. Brownell and Mr. Wagner whereby Mr. Brownell would get the service stations at Laconia and Ashland and Mr. Wagner would get the rest of the Hampshire Oil Company business. On August 15, Mr. Walker and Mr. Boggs came to Laconia to make the survey of the Hampshire Oil Company business. When Mr. Walker found that Mr. Brownell would probably only have two filling stations, the proposed survey was not made. Mr. Walker and Mr. Boggs brought with them forms of commission agency agreements, resellers agreements, and filling station leases. It was proposed that if an agreement were made, the defendant would lease the filling stations from Mr. Brownell and then lease them back again to the plaintiff and would buy the equipment at each station. The possible terms of and profits from a commission agency agreement were discussed.

The plaintiffs' brief states that at this point Mr. Brownell was in doubt as to the authority of Mr. Walker and Mr. Boggs to enter into an agreement with him, and that arrangements were accordingly made for him to confer at the defendant's Boston office the next day. It is true that the next meeting was on August 16 at the defendant's Boston office, but there is not the slightest bit of evidence to show that it was the result of any desire on the part of Mr. Brownell to satisfy himself of the authority of any of the defendant's employees. Mr. Brownell expected to see his friend Mr. Weess but instead conferred with Mr. Walker and Mr. Whelan, the defendant's Northeastern Division Manager with headquarters in New York. Mr. Whelan was Mr. Weess' superior. There was testimony that it was necessary to secure Mr. Whelan's approval of proposed commission agency agreements before they were submitted to an assistant vice-president of the defendant for approval or rejection. His duties were to develop and promote sales in his division.

Mr. Brownell testified that at this conference commissions were discussed and that the forms of commission agency agreement, resellers agreement, and leases of service stations left with him the day before were considered. He stated that Mr. Whelan told him that if he would sever all connections with the Hampshire Oil Company, acquire the leases of the Ashland and Laconia service stations, and form a new corporation, he, Mr. Whelan, could and would sign an agreement making Mr. Brownell the defendant's commission agent for three years.

Mr. Brownell and Mr. Wagner entered into an agreement dated August 21, providing for the former's separation from the Hampshire Oil Company. By the terms of the agreement, Mr. Brownell acquired the leases of the two service stations. On August 29, he received the charter of the Belknap Petroleum Corporation. He now apparently claims that this agreement and the formation of Belknap constituted acceptance of the offer allegedly made by Mr. Whelan on August 16th. The writ, however, alleges that the contract was made on September 11.

On August 23, Mr. Brownell followed Mr. Weess from Boston to Hartford and told him that he had complied with the terms prerequisite to the signing of the commission agency agreement. The next day he made a similar report to Mr. Whelan, Mr. Walker and Mr. Crowley, the defendant's New England Credit Manager.

As a result of the meeting on August 24, Mr. Walker and Mr. Crowley went to Laconia. The latter was desirous of obtaining more credit information about the plaintiffs. Mr. Walker brought with him some form contracts of commission agency agreements, resellers agreements and service station leases. These leases showed on their face that they had to go to New York for approval, and Mr. Brownell testified that he knew they had to go to New York. He also testified that he knew that unless his stations were leased to the defendant, it would not consider a commission agency agreement. On the advice of his attorney, Mr. Brownell objected to some of the terms of the agreements and refused to sign. He requested some changes in the forms, par-

ticularly a provision that the defendant's leases of the service stations should terminate concurrently with the commission agency.

On September 11, Mr. Brownell signed the revised commission agency agreement on behalf of Belknap, and Mr. Boggs initialled it. The plaintiffs also signed leases of the filling stations and executed the re-sellers agreements. None of these agreements was ever executed by the defendant. Mr. Brownell arranged for the purchase of new equipment, and Mr. Boggs submitted an order form for its purchase by the defendant. The agreement signed by the plaintiffs provided September 22 as the day when the contract was to go into effect, though Mr. Brownell testified that he had been told he could go into possession of the Laconia plant forty-eight hours after an agreement was reached.

Mr. Brownell went to Boston and conferred again with Mr. Weess. The latter told him that the whole deal was off as the costs were too high. Mr. Brownell said the deal could not be off because he had a contract, and he demonstrated to Mr. Weess that the costs had been erroneously computed. Mr. Weess stated that he was smart enough to have the costs sent to New York so that they would be accepted. Mr. Brownell admits that at that time he, received notice that the contract was subject to approval in New York.

He testified that previous to this notice he did not know that commission agency contracts had to be approved in New York though he knew that service station leases had to be so approved. He also knew that tank car and other contracts needed such approval. He stated that he had never negotiated a commission agency agreement when he was district manager in Rhode Island and Connecticut, but he admitted writing a letter to Mr. Weess concerning the negotiation of a commission agent agreement in 1934 and admitted receipt of a reply from the latter stating that "This, of course, would be subject to the approval of our New York office". He testified, however, that this was a different kind of agreement.

On October 4, Mr. Weess showed Mr. Brownell a letter which he had written recommending the commission agency agreement to Mr. Whelan for approval. He told Mr. Brownell not to worry since the next time he saw him he would be the defendant's commission agent. When he got no

further information, Mr. Brownell called New York and was told by Mr. Whelan's superior, an assistant vice-president, that a statistical survey was being made. Mr. Weess again assured Mr. Brownell that everything would come out all right, but on October 23, Mr. Brownell was notified that the agreement was not acceptable to the defendant's New York office because the costs were too high.

The plaintiffs continued to operate the two service stations for several months at a loss. They were finally sublet to the Hampshire Oil Company. The plaintiffs claim damages in the sum of $50,000 through the failure of the defendant to enter into the written commission agency agreement for three years as allegedly it agreed to do.

Mr. Brownell testified that through his personal experience as a former employee of the defendant, he knew that Mr. Whelan had charge of sales promotion, including sales to dealers, service stations, distributors, and commission agents, and that he also supervised service stations and sales managerial personnel. He said he knew that Mr. Whelan could negotiate certain contracts which could not be negotiated by subordinates. There was no representative of the defendant having offices in New England who was superior to Mr. Whelan. His immediate superior was Mr. McEacheran, Eastern Regional Sales Manager and Assistant Vice-President. Mr. Weess was immediately subordinate to Mr. Whelan. The forms for lease agreements provided for signature by an assistant vice-president while the commission agency agreement form did not provide for the signature of any particular representative of the company.

■ We believe that the action of the trial judge in granting the defendant's motion for a directed verdict should be affirmed. In so doing we need not decide whether an agreement actually existed nor pass upon the validity of the contention that the Statute of Frauds made the alleged contract unenforcible, since we are of the opinion that there was not sufficient evidence of the authority of the defendant's employees to enter into the alleged contract.

■ The trial judge stated that he was satisfied that there was no authority in any of the employees to make any agreement to enter into the contract which the plaintiffs

claim was made. We agree. There was no evidence of any sort given to establish the actual authority of Mr. Whelan except his own alleged statement that he had such authority. It is, of course, well settled, as the judge ruled at the trial, that agency and authority cannot be proved by the hearsay statements of the alleged agent himself. Orvis v. George, 5 Cir., 47 F.2d 1045, 1931; E. A. Strout Farm Agency v. Hosford, 81 N.H. 507, 128 A. 685, 1925; Bohanan v. Boston & Maine R. R., 70 N.H. 526, 49 A. 103, 1901; Am. L. Inst. Restatement of Agency § 285. There was no competent evidence to submit to the jury proving that Mr. Whelan had any actual authority to make a binding agreement to enter into a commission agency agreement with the plaintiffs.

■■ Nor do we believe that there was sufficient evidence to justify a jury in finding that Mr. Whelan had apparent authority to enter into the alleged agreement. The actions of the principal and the knowledge of a reasonable man in the position of the third person are the important factors in establishing apparent authority. The New Hampshire court has defined apparent authority as " 'that authority which a reasonably prudent man, induced by the principal's acts and conduct, in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge, would naturally suppose the agent to have' ". Atto v. Saunders, 77 N.H. 527, 529, 93 A. 1037, 1039, 1915. In Davison v. Parks, 79 N.H. 262, 263, 108 A. 288, 289, 1919, the court said that in order to find apparent authority it was necessary to show "that the principal has either so conducted his business as to give third parties the right to believe that the act in question is one he has authorized his agent to do, or that it is one agents in that line of business are accustomed to do". Cf. Sullivan v. John Hancock Mutual Life Insurance Co., 86 N.H. 184, 165 A. 277, 1933. We do not believe that the plaintiffs have come within these rules.

■ As far as the conduct of the defendant is concerned, it did nothing more than hold Mr. Whelan out as its Northeastern Division Manager, and the testimony did no more than show that he was in charge of sales and sales managerial personnel and negotiated certain contracts which could not be negotiated by subordinates. He was not held out as a general agent but as an employee with specific duties, one of a large hierarchy of officials.

Mr. Brownell knew that different contracts had to be negotiated and approved by different officials, yet there is no evidence that he made any attempt to ascertain the authority of Mr. Whelan to make this informal agreement to enter into a contract with him. The evidence clearly showed that he knew that an integral part of the entire negotiations, the leases of the service stations, had to be approved in New York and that the commission agency agreement would not be entered into without the approval of the leases. The correspondence with Mr. Weess in 1934 shows that Mr. Brownell knew that some forms of commission agency agreements had to have New York approval.

In spite of the foregoing evidence and his long experience with the defendant company, Mr. Brownell contends that he was entitled to rely on the position of Mr. Whelan as Northeastern Division Manager and to infer that he had authority without making any inquiries. He says that he knew Mr. Whelan's duties. He relies on General Motor Truck Co. v. Texas Supply Co., 4 Cir., 64 F.2d 527, 1933, for the proposition that if an agent is in charge in a particular locality this can be taken into consideration in deciding whether it is reasonable to assume that the agent had authority to make certain contracts. This is undoubtedly true, but the test was restricted by the requirement that the act must be such that a reasonable person, having knowledge of the agent's business, would believe it to be among the agent's duties from the character of his known duties. From the knowledge of the defendant's business possessed by Mr. Brownell and his previous experience with the powers of the officials of the company in making contracts, it was hardly reasonable for him to assume authority in Mr. Whelan simply because he knew that he was in charge of sales and managerial personnel in the New England area. Indeed his knowledge that different contracts needed different approval would have put a reasonable man on inquiry.

■ Mr. Brownell likewise relies strongly on the fact that the form for a commission agency agreement did not provide for the signature of any particular Tidewater official while the leases expressly required the signature of an assistant vice-president and the resellers agreement that of a man-

ager. We do not consider that sufficient to establish the apparent authority of Mr. Whelan. Mr. Brownell clearly had the duty of inquiry into the authority of the agent to sign or agree to sign this agreement. The defendant in no way misled him as to the authority of Mr. Whelan. A reasonably prudent man in the exercise of reasonable diligence and sound discretion under similar circumstances with Mr. Brownell and with like knowledge would have made inquiry into the actual authority of Mr. Whelan before taking the important steps allegedly taken solely in reliance on his promises in the name of the defendant. Cf. Orvis v. George, supra; Great American Indemnity Co. v. Richard, 90 N.H. 148, 5 A.2d 674, 1939.

Nor is there any evidence that the defendant company should have expected that Mr. Brownell would be misled merely by the position of Mr. Whelan. This is a necessary element in establishing apparent authority. Edelstone v. Salmon Falls Mfg. Co., 84 N.H. 315, 150 A. 545, 1930; Davison v. Parks, supra. Mr. Brownell adduced no evidence showing that the making of the agreement attributed to Mr. Whelan was one that similar employees in that line of business were accustomed to make. In fact it is well known that most large oil companies require approval of many contracts at the home office.

We do not believe there was sufficient evidence of authority or apparent authority in Mr. Whelan to make the alleged agreement to sustain a verdict for the plaintiffs. Therefore, the direction of a verdict for the defendant must be affirmed.

The judgment of the District Court is affirmed with costs to the appellee.