Hillsborough
No. 79-446

## CONTINENTAL INSURANCE CO.

v.

## SEPPALA & AHO CONSTRUCTION CO., INC.

May 11, 1981

*John C. Emery*, of Manchester, by brief and orally, for the plaintiff.

*Prunier, Mazerolle & Frasca P.A.*, of Nashua (*Gerald R. Prunier* on the brief and orally), for the defendant.

BOIS, J. The defendant purchased a workmen's compensation policy from the plaintiff Continental Insurance Co.'s agent allegedly based upon the representation that only New Hampshire rates would apply although the area of exposure under the policy included New Hampshire and Massachusetts. We are asked to decide whether the policy allowed the plaintiff to retrospectively apply Massachusetts rates at the termination of the policy coverage period to that percentage of the defendant's employees who had worked in Massachusetts during the coverage period. The defendant argues on appeal that the representations of the carrier's agent and the reference in the policy to only New Hampshire rates should have precluded the imposition of any other rate schedule. We reject this argument and, therefore, affirm the decision of the trial court.

In December of 1970, the plaintiff's agent, the Slawsby Insurance Agency (Slawsby) of Nashua, issued a Workmen's Compensation and Employers' Liability Policy to the defendant, Seppala & Aho Construction Co., Inc. The policy coverage applied to all of the defendant's employees who were subject to the workmen's compensation and occupational disease laws of New Hampshire and Massachusetts, and the coverage period ran from January 1, 1971 to January 1, 1972. The plaintiff later issued an "all-state" endorsement on this policy, whereby the plaintiff agreed "[t]o reimburse the insured for all compensation and other benefits required of the insured under the workmen's compensation or occupational disease law of [forty other] state[s]."

At the time the original policy was issued, the plaintiff calculated the estimated advance premium based on the New Hampshire rate base. Although the defendant paid this estimated premium at that time, the policy expressly stated that this premium was "an estimated premium only" and that "[u]pon termination of this policy, the earned premium shall be computed in accordance with the rule, rates, rating plans, premiums and minimum premiums applicable to this insurance in accordance with the manuals in use by the company."

On April 10, 1972, the plaintiff audited the records of the defendant to determine the final premium due. The plaintiff then advised the defendant that the premium amount due for coverage of the defendant's employees working in Massachusetts was to be based on the Massachusetts rate base, and that the New Hampshire rates would apply only to the defendant's employees working in New Hampshire. The audit, which applied these two rate bases, resulted in a $23,688 deficit owed by the defendant to the plaintiff. The defendant protested the amount due on this bill, and the plaintiff thereupon brought an action in assumpsit to recover that sum.

In testimony before the Master (*Earl J. Dearborn*, Esq.), a vice-president of the defendant corporation admitted that he had not read the policy at the time that it was purchased from Slawsby. He further testified that the corporation had purchased the policy in reliance on the representation by Slawsby that only New Hampshire rates would be charged on the policy. The master found that although the defendant apparently had relied on representations by the carrier's agent, it had not introduced any testimony from any officer of the agency or person at the agency who handled the defendant's account. He further concluded that had the officers of the defendant corporation "read the policy they would have noted that the actual rate was determined at the close of the policy year

and that the selling agent had no authority to determine rates." Moreover, the master did not find that the plaintiff had held out to the defendant that Slawsby had the authority, or that the circumstances indicated that Slawsby had apparent authority, to set rates. Accordingly, the master recommended a verdict in favor of the plaintiff in the amount of $23,688, which the Trial Court (*Randall*, J.) approved.

■ First, we consider the argument of the defendant that only New Hampshire rates should apply because it had purchased the policy from the plaintiff based upon the alleged representations made by Slawsby, the plaintiff's agent, that only New Hampshire rates would be charged. "Before the principal can be bound it must appear that he 'has either so conducted his business as to give third parties the right to believe that the act in question is one he has authorized his agent to do, or that it is one agents in that line of business are accustomed to do.' " *Sullivan v. Insurance Co.*, 86 N.H. 184, 185, 165 A. 277, 278 (1933) (quoting *Davison v. Parks*, 79 N.H. 262, 263, 108 A. 288, 289 (1919)). *See Belleau v. Hopewell*, 120 N.H. 46, 51, 411 A.2d 456, 459 (1980). Our review of the record leads us to the same conclusion as that of the master; the evidence does not support a finding that the plaintiff ever expressly or impliedly held out to the defendant that Slawsby had the authority to set rates on this policy. Despite the testimony of the defendant's vice-president that the corporation had relied on statements by the plaintiff's agent, the record contains no evidence introduced through either the plaintiff or Slawsby that Slawsby had either actual or apparent authority to set rates and thereby bind the insurer. *See Sullivan v. Insurance Co.*, *supra* at 185, 165 A. at 278; RSA 402:25. Accordingly, because we find no error regarding this determination by the master, *Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981); *Spectrum Enterprises, Inc. v. Helm Corp.*, 114 N.H. 773, 777, 329 A.2d 144, 147 (1974), we now turn our inquiry to the language of the policy between the parties.

■ "If a policy is so constructed that a reasonable man in the position of the insured would not attempt to read it, the insured's reasonable expectations will not be delimited by the policy language, regardless of the clarity of one particular phrase among the Augean stable of print." *Storms v. U.S. Fidelity & Guar. Co.*, 118 N.H. 427, 430, 388 A.2d 578, 580 (1978). In the case before us the master found that, had the defendant's officers read the policy, they "would have noted that the actual rate [would be] determined

at the close of the policy year and that the selling agent had no authority to determine rates." *Cf. Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 689–90, 406 A.2d 711, 714 (1979). Because our reading of the policy leads us to agree with the master's determination that the terms of the policy are clear and unambiguous, we need not inquire beyond the language of the policy to determine the "insured's reasonable expectations," *Connolly v. Galvin*, 120 N.H. 219, 221, 412 A.2d 428, 429 (1980); *Storms v. U.S. Fidelity & Guar. Co.*, *supra* at 430–31, 388 A.2d at 581, nor to construe it "in favor of the insured and against the insurer." *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 985 (1980). Finding no error, we hold that the order of the trial court is affirmed.

*Affirmed.*

All concurred.