**Bruce E. HENLEY, Plaintiff,**

v.

**LOKEY OLDSMOBILE–COUNTRYSIDE INC., a corporation f/k/a Countryside Oldsmobile, Inc., a corporation, Defendant.**

**No. 91–511–CIV–T–3A17.**

United States District Court, M.D. Florida.

March 1, 1993.

See also, F.Supp. .

Paul Nelson, Law Office of Paul Nelson, Kimberly J. Lee, Paul A. Nelson, P.A., Gregory Joseph Blackburn, Nelson & Associates, Tampa, FL, for plaintiff.

William C. Owen, Loula Moore Fuller, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, FL, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on the Motion for Summary Judgment (Dkt. # 76) filed by the Defendant, Lokey Oldsmobile.

■ Summary Judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in a light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969).

The Supreme Court of the United States held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.*, at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

Rule 56(c) requires that the non-moving party go beyond the pleadings to designate specific facts showing there is a genuine issue for trial. Thus, affidavits, depositions, answers to interrogatories and admissions on file are all relevant in determining whether a motion for summary judgment should be granted. *Id.*, at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

### Findings of Fact

■ This action arose under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001 et seq. Plaintiff Henley was seriously injured on May 28, 1989 while an employee at Mossy–Kelly Oldsmobile, Inc. (hereinafter Mossy Kelly). Mossy Kelly's employee insurance plan was provided by Adjustco and FADIBT in compliance with ERISA. Therefore, Plaintiff Henley was covered under this plan at the time of his accident.

In June 1989, Defendant Lokey Oldsmobile bought out Mossy Kelly through an asset purchase agreement acquiring the assets and employees of Mossy Kelly. Lokey Oldsmobile maintained coverage under the Adjustco and FADIBT plan until July 31, 1989. Plaintiff Henley was paid benefits under the plan during this period of recovery and absence from work. However, on July 31, 1989, when Lokey Oldsmobile terminated coverage with Adjustco and FADIBT Plaintiff Henley's re-

imbursement of medical expenses under the Adjustco and FADIBT plan ceased. Lokey Oldsmobile never enrolled Plaintiff Henley for benefits under their new self-insured ERISA plan administered by Marcotte Administrators, Inc. Therefore, Plaintiff Henley was left without employee health benefits and subsequently filed a Fourth Amended Complaint against Lokey Oldsmobile alleging negligence.

Defendant claims that Plaintiff Henley was never an employee of Lokey Oldsmobile and is therefore not entitled to benefits. It is an undisputed fact that, due to Plaintiff Henley's injuries, he was unable to work at Lokey Oldsmobile subsequent to the asset purchase. However, it is also an undisputed fact that Defendant Lokey Oldsmobile never terminated, laid off, or otherwise discharged Plaintiff Henley. Thus, the first issue to be addressed by this Court is whether Plaintiff Henley was, as a matter of law, an employee of Lokey as of June 1, 1989.

## I. Discussion

### A. Deposition of Plaintiff Bruce Henley

In Plaintiff Henley's deposition testimony, he states that he was never terminated by Lokey Oldsmobile and that it was his understanding that he was still an employee. Both Chuck LaProva, Henley's superior, and possibly the new general manager, Martin Lev, made representations indicating that Plaintiff Henley was an employee. Plaintiff Henley states as follows:

Q. Is there any time that he (Chuck Laprova) told you that you were not an employee of Countryside Olds?

A. No, I was employed because I still had my uniforms and everything. I was never released. They said that it was a medical leave of absence.

Q. Who said that?

A. Well, that's what Mr. LaProva said, it's like a medical leave of absence. And a couple of the girls upstairs that I talked to said that that's what they were going to do.

And I believe I talked to—I can't remember his name, but I think he was the new general manager. This was,

you know, a period after I had been hurt, and talked to him. And he said as far as he understood, you know, when I got better, when I could work, I had my job. But I don't remember his name.

Q. Was that Marty Lev?

A. That might be it. I'm not sure. It was just on the telephone.

Furthermore, Plaintiff Henley contacted Countryside Olds after learning that he was no longer covered under the Adjustco and FADIBT plan. The deposition testimony was as follows:

Q. Did you ever contact Mossy Kelly or Countryside Olds at that time to ask about your benefits?

A. Yes. I called that lady—the lady in the business office. I don't remember her name—

Q. Are we talking about the same person that you'd always talked to in the business office/

A. Yes.

And she said that another company had taken over and that they were picking up the insurance coverage, so that it may take awhile for the paperwork and everything to get done.

Q. But you were told by this lady that you would be covered?

A. Sure.

Q. Would you know that lady's name if you heard it?

A. Probably.

Q. Thelma?

A. That may be it.

The deposition testimony of Plaintiff Henley is contradicted by the affidavit of Martin Lev. In his affidavit Martin Lev states that Plaintiff Henley never spoke to him regarding a position at Lokey. Furthermore the affidavit of Thelma Crisalli states that at no time did she indicate to Adjustco that Plaintiff Henley was an employee of Lokey nor did she have any personal knowledge Plaintiff was an employee of Lokey. This affidavit of Crisalli conflicts with Plaintiff Henley's deposition testimony which suggests that

Crisalli confirmed that Plaintiff Henley would be covered by Lokey's new insurance policy. Thus, considering Plaintiff Henley's deposition testimony alone, factual disputes are present in the record regarding Plaintiff Henley's employment status.

### Deposition testimony of Chuck LaProva

■ Mr. Chuck LaProva, the general service manager, served as Plaintiff Henley's superior while Plaintiff Henley was employed at Mossy–Kelly. After the asset purchase, Chuck LaProva was retained by Lokey until he was affirmatively terminated. Defendant argues that Chuck LaProva's testimony cannot be considered for two reasons. First, the Defendant argues that the deposition was not part of the record on file and the court can therefore not consider LaProva's testimony. However, Plaintiff Henley subsequently cured this defect by submitting a Notice of Supplemental Filing.

Second, the Defendant argues that the deposition testimony is hearsay and is not admissible to prove agency or authority. Defendant relies on *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1376 (10th Cir. 1989), which states that "an agent's authority to act cannot be established solely from the agent's actions: the authority must be established by an act of the principal." *Pytlik* is silent on the issue of hearsay. Rather, the *Pytlik* court is deciding an issue of jurisdiction. *Pytlik,* 887 F.2d at 1376 (Pytlik's complaint contained no factual allegations to support a finding that Italiana authorized agents to act in Oklahoma).

Defendant further relies on *Brownell v. Tide Water Assoc. Oil Co.,* 121 F.2d 239 (1st Cir.1941) to show that the statements made by Chuck LaProva are hearsay. However, *Brownell* is concerned with statements made *at trial* to prove agency and authority. 121 F.2d at 244 (agency and authority cannot be proved by the hearsay statements of the alleged agent himself). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801. Clearly, Chuck LaProva's deposition testimony does not fall under this definition of hearsay. Furthermore, affidavits, depositions, answers to interrogatories and admissions on file are all relevant in determining whether a motion for summary judgment should be granted. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. Thus, this Court can consider the deposition testimony of Chuck LaProva.

■ Chuck LaProva deposition testimony states that he made representations to Plaintiff Henley regarding his employment:

Q. Did you ever make representations to or statements to Mr. Henley that, as soon as he got better, he would have a job?

A. Sure.

A corporation is bound by the acts and statements of its agents done or made within the scope of their express or apparent authority. *Continental Baking Co. v. United States,* 281 F.2d 137, 150 (6th Cir.1960). It is not necessary that the corporation specifically authorize the agent to commit the act or make the statement. *Id.* When Lokey Oldsmobile bought out Mossy Kelly, Chuck LaProva was told by Mr. Lokey and the first general manager that LaProva "was the service manager and everything was status quo." Clearly, while a service manager at Mossy Kelly Chuck LaProva had the authority to hire and fire employees. Maintaining the status quo would indicate that, while employed by Lokey Oldsmobile, LaProva would have the same authority. However, Martin Lev's affidavit states that LaProva "was subordinate to my position and any hiring/firing and/or retaining of employees of Lokey Oldsmobile–Countryside, Inc. and/or employees of the previous dealership Mossy–Kelly Oldsmobile, was subject to my approval." Therefore, there is a factual dispute as to the apparent and/or express authority of Chuck LaProva.

Furthermore, according to Chuck LaProva's deposition testimony, he had conversations with Martin Lev about Bruce Henley and it was LaProva's understanding that Martin Lev believed Mr. Henley to be an employee of Countryside Oldsmobile. However, in Martin Lev's affidavit, Martin Lev states that "at no time during the transition phase from Mossy Kelly Oldsmobile, Inc. to Lokey Oldsmobile–Countryside, Inc. did

942

Charles LaProva ever discuss with me the matter involving Bruce Henley as being an injured and/or unable to work employee of Mossy Kelly Oldsmobile, Inc., nor did Charles LaProva ever request Bruce Henley be retained as an employee of Lokey Oldsmobile–Countryside, Inc." The inconsistency in the statements of Chuck LaProva and Martin Lev create another clear factual dispute in the record regarding Plaintiff Henley's employment status.

### Asset Purchase Agreement

In *Bellingham Frozen Foods, Inc. v. N.L.R.B.,* 626 F.2d 674, 678 (9th Cir.1980), the court held that a purchaser of assets is under no obligation to hire employees of a predecessor. However, in the case at hand, the terms of Agreement to Purchase stated in subsection G that:

> Vendor undertakes to *exercise every effort to retain existing personnel,* to insure the undisturbed continuity of the present new car sales and service and parts volume, to preserve vendor as an ongoing business and to prevent the occurrence of any event which would materially adversely effect the Vendor's business or assets being purchased.

Further, Subsection B reads:

> Vendor agrees to furnish Purchaser a list of all employees, a designation of their respective duties as of closing date and their rates of compensation, including base pay, incentive pay and any other method of compensation.

Defendant Lokey contends that this Agreement to Purchase shows that the decision to hire a prior Mossy Kelly employee was purely discretionary. Therefore, Defendant argues that all Mossy Kelly were deemed fired unless specifically "rehired". However, Plaintiff contends that a clear inference from the Agreement to Purchase is that all employees were retained unless specifically fired. Clearly, Plaintiff Henley was never terminated by Lokey Oldsmobile nor was Plaintiff Henley ever specifically rehired. Thus, there is a factual dispute as to whether Mossy Kelly employees had to be specifically "rehired" before they could be considered an employee of Lokey Oldsmobile or whether they were deemed an employee of Lokey Oldsmobile until specifically "fired." Therefore, the Agreement to Purchase contains a factual dispute in the record regarding Plaintiff Henley's employment status.

### Conclusion

Defendant has failed to show that, as a matter of law, Plaintiff Henley was *not* an employee of Lokey Oldsmobile. Clearly, there exists a genuine issue of material fact as to whether Plaintiff Henley was an employee of Lokey Oldsmobile. Therefore, because the Defendant has failed to sustain its burden as to the first issue raised on Summary Judgment, this Court need not address the remaining issues.

**ORDERED** that Defendant's Motion for Summary Judgment be **denied.**

**DONE** and **ORDERED.**