Grafton
No. 79-186

JOHN J. KAROL, JR.

v.

NEW HAMPSHIRE INSURANCE COMPANY

May 5, 1980

*Clauson, Struckhoff & Kelly,* of Hanover (*K. William Clauson* orally), for the plaintiff.

*Hinkley & Donovan,* of Lancaster (*Walter D. Hinkley* orally), for the defendant.

KING, J. This appeal arises from a petition for declaratory judgment seeking recovery for losses incurred by the plaintiff, John J. Karol, Jr., as a result of damage to a documentary film he was producing. Recovery is sought under an insurance policy issued to the plaintiff by the defendant, New Hampshire Insurance Company. The Superior Court (*Johnson,* J.) ruled that the plaintiff is entitled to recovery under the policy. We affirm the court's decree.

The plaintiff is a professional film-maker doing business under the name of Apertura. He is a former attorney who became interested in making motion pictures while a deputy tax commissioner in the state of Vermont and became a full-time film-maker in January 1969. In June 1977, the plaintiff contracted with the National Trust for Historic Preservation to produce a film about the revitalization of older downtown areas throughout the country. This film was later entitled "Main Street."

On several occasions prior to the current dispute, the plaintiff obtained insurance coverage for film production projects from the Gould S. Richmond Agency in Orford, New Hampshire. In turn, the agent placed the insurance with the defendant company. In the fall of 1977, the plaintiff sought "all-risk insurance" from the agent for the film production, "Main Street." The agent agrees that the plaintiff "asked [him] for a broad form coverage" and the agent sent a memorandum dated October 13, 1977, to the defendant, reflecting the plaintiff's request in the following language:

Please write a Valuable Papers & Records policy, all risk coverage, for John J. Karol, Jr. d/b/a Apertura, Orford, N.H. Risk #155. Fire contents rate at Apertura, 1.54 (73908). The policy is for the National Trust Main Street film, & is to cover materials, work product, tangibles at Apertura, in-transit, and at laboratories in New York.

The defendant's notes reveal the company's confusion in writing the policy, and an internal memorandum instructed that a transportation trip (T.T.) policy should be written. Such a policy would have covered the loss at issue in this case. These instructions were not followed, and a T.T. policy was never issued. Finally, the company "doctored up" an "All-Risk Transportation Form Number 5" policy to insure "Main Street."

After film had been shot at various locations throughout the country, the film was sent to T.V.C. Laboratories for processing. A malfunction occurred during the developing process at T.V.C. that ruined the film. The defendant asserts: (1) that the policy issued to the plaintiff for the film's production did not cover malfunctions during its processing; and (2) that because the plaintiff admitted that he had read the policy, and because of his legal training, he should have been aware that there was no coverage.

In denying coverage to the plaintiff, the defendant principally relies on a provision in the policy which excludes coverage against "(c) loss or damage . . . due to any process or while being actually worked upon and resulting therefrom." Defendant argues that the policy expressly excluded coverage while the film was being processed and worked upon and that the film damage occurred while being processed. The defendant concludes that the exclusion should bar the plaintiff's recovery because of the clearly stated exclusion, the plaintiff's legal background, a finding by the trial court that he is "a bright and sophisticated individual," and the fact that the plaintiff did read the policy.

■ We need not consider the intelligence of the insured in determining whether he comprehended the terms of an insurance policy. "The well-established rule in this State is that insurance policies are interpreted from the standpoint of the average layman 'in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.'" *Brown v. City of Laconia,* 118 N.H. 376, 378, 386 A.2d 1276, 1277 (1978), *quoting*

*Aetna Ins. Co. v. State Motors*, 109 N.H. 120, 125, 244 A.2d 64, 67 (1968); *Auclair v. Allstate Ins. Co.*, 118 N.H. 626, 629, 392 A.2d 1197, 1199 (1978). This is clearly an objective standard.

The defendant argues in the alternative, however, that even an insured of ordinary intelligence would understand the policy to exclude loss or damage while the film was being "worked upon" or while it was being processed. The exclusionary language upon which the insurance company relies to defeat any coverage appears in the text following an "Armageddon" clause which excludes hostile or warlike action, any weapon of war employing atomic fission or radioactive force, insurrection, rebellion, revolution or destruction under quarantine, short circuit or other electrical injury: "[l]oss or damage caused by wear and tear, gradual deterioration, insects, vermin, defect, inherent vice, or *damage sustained due to any process or while actually worked upon* . . ." (emphasis added). The processing exclusion is followed by exclusions for nuclear reaction and nuclear radiation, misappropriation, secretion, conversion, infidelity or any dishonest act on the part of the insured. We agree with the trial court that an exclusion for film damage due to processing was neither clear nor readily apparent from the policy.

The "all-risk" policy provides coverage in paragraph 1 for "a film in the course of production." Paragraph 2 provides coverage "wherever the work is to be performed and at any location for temporary storage or transit. . . ." Based upon this language, the plaintiff concluded that he had coverage:

> I read it, but, of course, what I really read were the first two paragraphs to see if they contained exactly what I asked for. I did not read with great detail all the smaller points, but I did read the first two paragraphs.

The plaintiff requested, and the insurer provided, "all-risk" coverage for "a film in the course of production." Loss during the processing of the film is certainly a risk that an average, reasonable insured would understand the policy to cover. *See Brown v. City of Laconia supra; Magulas v. Traveler's Ins. Co.*, 114 N.H. 704, 327 A.2d 608 (1974); *Peerless Insurance Co. v. Clough*, 105 N.H. 76, 193 A.2d 444 (1963).

Moreover, the parties' prior course of dealings would lead an insured to expect that he had coverage for such damage. *See Griswold v. Heat Corporation*, 108 N.H. 119, 123, 229 A.2d 183,

187 (1967). Plaintiff's prior T.T. policies for July 1974, November 1975, and December 1975, specifically covered damage to the film from laboratory processing. In 1976, when the plaintiff sought coverage for the movie "A Place In Time," he sought substantially broader coverage than he had under the previous T.T. policies. Essentially, a T.T. policy covers only the risk of loss during transportation of the film to and from a processor. The plaintiff wanted to expand coverage for the whole course of film production. The agent and the plaintiff recognized that the coverage for "A Place In Time" was to be broader than that afforded by the T.T. policies.

The trial court determined that the T.T. policies purchased from the defendant through its agent covered "the risk of a failure during the processing of film" and further agreed that "it would appear that under the earlier policy (the policy for 'A Place In Time') had the loss occurred as it did in the 'Main Street' film, that it would appear to have covered." The trial court held that:

> Given the past history of the dealings between the Plaintiff and the Defendant . . . it is not surprising that plaintiff believed that he had insurance for the "Main Street" film and the loss which he incurred.

Under the circumstances of this case, we hold that the insured was justified in the reasonable expectation that the insurance would cover loss during the processing of the film. *See Lariviere v. New Hampshire Insurance Group*, 120 N.H. 168, 413 A.2d 309 (1980); *Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 406 A.2d 711 (1979); *Magulas v. Traveler's Ins. Co.*, 114 N.H. 704, 327 A.2d 608 (1974).

Defendant next argues that because the plaintiff sent the film to a developing laboratory which excluded recovery for consequential damage resulting from the processing of the film, he acted in violation of the policy by "giving up" whatever subrogation rights the defendant might have against the laboratory.

The defendant insurer inserts a provision in each of its policies that if the insured agrees to release the insurer's subrogation rights, then the insurer is not liable for coverage. The trial court recognized that such disclaimers of consequential damages by film laboratories are routinely contained in such policies. Because film processors generally have such a standard warranty disclaimer, it cannot be said that the plaintiff has

knowingly relinquished subrogation rights which are properly those of the defendant. The insured did not release a claim that the insurer might otherwise have had against the film laboratory. He merely sent the film subject to the company's general disclaimer of consequential damages. This does not violate the subrogation rights of the insurance company.

*Affirmed.*

All concurred.