Cheshire
No. 79-360

JERRY H. GRIMES

v.

CONCORD GENERAL MUTUAL INSURANCE CO.

November 13, 1980

*Aaron A. Lipsky,* of Keene, by brief and orally, for the plaintiff.

*Wiggin & Nourie,* of Manchester (*Richard B. McNamara* orally), for the defendant.

BROCK, J. This appeal involves a petition for declaratory judgment (RSA 491:22) by which the plaintiff, Jerry H. Grimes, seeks a judicial determination of the extent of his insurance coverage under a single Family Combination Automobile Policy issued to him by the defendant, Concord General Mutual Insurance Company. The Trial Court (*King,* J.), after denying a motion for summary judgment filed by the defendant, transferred three questions of law to this court pursuant to RSA 491:17. The questions are as follows:

> "1. Whether the New Hampshire Motor Vehicle Financial Responsibility Act permits the automobile insurance carrier to reduce uninsured motorist benefits available to the insured by offsetting them with medical payment benefits paid to the insured under the policy.

2. Whether the plaintiff is entitled to stack the uninsured motorist benefits contained within the single insurance policy.

3. Whether the plaintiff is entitled to stack the medical payment benefits available to each person contained within the single policy."

The facts giving rise to this action are undisputed. On July 13, 1976, the plaintiff, while operating one of his two automobiles, was injured in an accident. Following the accident, the plaintiff, with the acquiescence of the defendant, negotiated a settlement in the amount of $10,000 with the insurance carrier for the operator of the other car. This sum represented the limits of the other operator's liability coverage, and because it was insufficient to pay the plaintiff's medical expenses, the plaintiff sought to recover additional sums under his own insurance policy.

The plaintiff's policy provided coverage for two vehicles owned by him, one of which he was operating at the time of the accident. Each vehicle was covered by uninsured motorist protection in the amount of $20,000 per person and $40,000 per occurrence, with a separate premium charged for each car. In addition, each vehicle was covered for medical payment benefits of $2,000 and had liability coverage in the amount of $50,000/$100,000, with separate premiums being charged for each car for each class of coverage.

In response to the plaintiff's demand, the defendant paid the plaintiff $2,000 under the medical payment portion of the policy and $8,000 under the uninsured motorist provisions of the policy. Relying upon a clause in the policy, the defendant claimed the medical payments as a credit against uninsured motorist benefits. The parties agree that the defendant may apply the $10,000 paid to the plaintiff by the other driver's insurance carrier as a credit against the uninsured motorist benefits. *See Vigneault v. Travelers Ins. Co.*, 118 N.H. 75, 79, 382 A.2d 910, 913 (1978).

Dissatisfied with the position taken by the defendant, the plaintiff filed a petition for declaratory judgment asserting three points: (1) that the defendant is not permitted to reduce uninsured motorist benefits by offsetting them with the medical payment benefits; (2) that the plaintiff can "stack" the uninsured motorist coverage provided for each automobile for total uninsured motorist benefits of $40,000/$80,000, with the defendant being able to claim credit for the $10,000 liability settlement with the other driver's insurance carrier; and (3) that the plaintiff can "stack" the medical payment benefits for a total of $4,000 medical payment coverage.

These three claims led the trial court to transfer the three questions of law previously set out.

■ The first question transferred, whether the carrier can reduce its insured's uninsured motorist benefits by offsetting them with medical benefits paid him, was recently answered in the negative in *Bertolami v. Merchants Mutual Ins. Co.*, 120 N.H. 308, 414 A.2d 1281 (1980). The limits of liability clause applicable in the instant case is identical to the one at issue in *Bertolami*. There we held that the clause violates statutory law, RSA 268:1, 268:15-a, and was therefore void. *Bertolami, supra* at 312–13, 414 A.2d at 1283. The answer to the first question is therefore "no."

The second question presented is whether the plaintiff is entitled to stack the uninsured motorist benefits contained within a single policy that insures two cars, one of which the plaintiff was operating when the accident occurred. Although this issue has been extensively litigated elsewhere, *see generally* N.H. Bar Ass'n CLE Handbook, *Uninsured Motorists*, J. F. Davis at 87–112 (1980), this is an issue of first impression in this State. The plaintiff asserts that *Courtemanche v. Lumbermens Mutual Cas. Co.*, 118 N.H. 168, 385 A.2d 105 (1978), is dispositive of the issue, while the defendant relies on *Eckert v. Green Mt. Ins. Co. Inc.*, 118 N.H. 701, 394 A.2d 55 (1978), as controlling authority. Neither of these cases is directly on point, however. *Eckert* addressed the question of intra-policy stacking of medical payment benefits while the issue here is uninsured motorist benefits. *Courtemanche*, on the other hand, dealt with uninsured motorist benefits but on an *inter*-policy basis as applied against "other insurance" provisions in the policy. Here, we are concerned with the effect that a "Limits of Liability" clause has on intra-policy stacking of uninsured motorist benefits. The relevant portion of the limits of liability clause contained within the uninsured motorist section of the policy, which is separate and distinct from the limits of liability clause contained within the medical payments section, reads:

"(a) The limit of liability for family protection coverage stated in the declaration as applicable to 'each' person is the limit of the company's liability for damages, including damages for care or loss of services, because of bodily injuries sustained by one person as the result of any one accident, and subject to the above provision respecting each person, the limit of liability stated in declarations as applicable to 'each' accident is the total limit of the company's liability for all damages, includ-

ing damages for care or loss of services, because of bodily injury sustained by two or more persons as any result of the accident."

Generally, those jurisdictions that have allowed stacking in cases similar to this have done so for one or more of three basic reasons. The first reason given involves the double premium argument, whereby the insured is considered to have paid twice for the coverage and thus is entitled to stack it. *E.g.*, *Kemp v. Allstate Ins. Co.*, 601 P.2d 20, 24 (Mont. 1979). The second reason that has persuaded some courts to allow stacking is a finding that the exclusionary language that prohibits intra-policy stacking is ambiguous. *Pearthree v. Hartford Acc. & Indem. Co.*, 373 So. 2d 267, 270–71 (Miss. 1979). The final reason relied upon by some courts ruling in favor of intra-policy stacking of uninsured motorist benefits is that their jurisdiction's uninsured motorist statutes require such a result. *E.g.*, *Holloway v. Nationwide Mut. Ins. Co.*, 376 So. 2d 690, 694–95 (Ala. 1979). Because these represent the most cogent and most often cited reasons in support of intra-policy stacking of uninsured motorist benefits we will examine each separately.

The double premium argument alone, as applied to this particular case, does not persuade us to hold that the plaintiff has a right to stack his uninsured motorist benefits contained within the single policy. There are, nevertheless, several aspects of this argument that warrant consideration. The plaintiff contends that the insurance contract is one of adhesion, that he is paying double costs but not receiving any additional coverage in return, contrary to his reasonable expectations, and that this results in a windfall to the insurance company.

First, we note that RSA 268:15-a requires that uninsured motorist protection be included in every automobile liability insurance policy issued in this State on vehicles registered in this State. In that sense, the uninsured motorist clause is as much a contract of adhesion for the insurance carrier as it is for the insured.

Neither can we agree, with confidence, that the plaintiff is paying an extra premium without receiving something in return. When an insured owns two vehicles that are constantly available for use not only by him, but by members of his family and others, the risk that someone operating one of those vehicles will be involved in an accident with an uninsured motorist is obviously greater than if only one vehicle were available for use. Consequently, an insurance carrier's exposure to that risk may be enhanced. Other courts have recognized that the second premium

paid on the second car does afford some extra protection that otherwise would not exist. *See, e.g., Castle v. United Pacific Ins. Group*, 252 Or. 44, 448 P.2d 357 (1968); *Holland v. Hawkeye Secur. Ins. Co.*, 230 N.W.2d 517 (Iowa 1975); *Cunningham v. Western Cas. & Sur. Co.*, 243 N.W.2d 172, 174 (S.D. 1976), and cases cited. Cf. *Pearthree v. Hartford Acc. & Indem. Co.*, 373 So. 2d 267, 270–71 (Miss. 1979) (court held double premium argument not dispositive by itself but held stacking allowed on ground that policy language was ambiguous).

■ We also reject the proposition that, as a matter of law, the payment of a double premium represents a windfall to the insurance carrier. To conclude otherwise would require that we overlook the fact that the setting of insurance rates is a "highly technical and complex" process, *Appeal of Nationwide Ins. Co.*, 120 N.H. 90, 93, 411 A.2d 1107, 1109 (1980), which the legislature has left to the insurance commissioner, RSA 412:14, :15, whom we have recognized to be an expert in the field. *Insurance Serv. Office v. Whaland*, 117 N.H. 712, 717, 378 A.2d 743, 746 (1977).

Although we have in the past regarded the payment of double premiums as a factor to be considered, *see, e.g., Shea v. United Services Auto. Assoc.*, 120 N.H. 106, 411 A.2d 1118 (1980); *Eckert v. Green Mt. Ins. Co.*, 118 N.H. 701, 705, 394 A.2d 55, 58 (1978), we do not view it as dispositive. Rather, we view it as a factor to be considered in the application of the "reasonable expectations of the insured" doctrine. *See Shea v. United Services Auto. Assoc. supra.* However, under the reasonable expectations doctrine the policy is interpreted "in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured," *Hanover Insurance Co. v. Grondin*, 119 N.H. 394, 397, 402 A.2d 174, 176 (1979) (citations omitted), unless the policy is so constructed as to discourage a reasonable man from attempting to read it, *Storms v. U.S. Fidelity & Guar. Co.*, 118 N.H. 427, 430, 388 A.2d 578, 580 (1978), or unless the parties' prior dealings would lead the insured to form a reasonable belief that the policy provided him the claimed coverage. *Karol v. New Hampshire Insurance Co.*, 120 N.H. 287, 290, 414 A.2d 939, 941 (1980). We do not consider, nor does the plaintiff claim, that the policy in this case constituted an "Augean stable of print" as was the case in *Storms supra*, or that his prior dealings with the insurer and its agents caused him to form the reasonable expectation that his policy provides the coverage he now claims that it does, as was the case in *Karol*. Moreover, we are convinced that the limitation of coverage clause contained within the uninsured motorist section of the policy is

sufficiently clear that the "ordinarily intelligent insured" after a "more than casual reading" would understand it to limit the carrier's liability to the amount stated in the declaration ($20,000) for injuries sustained by one person in one accident.

The final prong in the plaintiff's argument in support of intra-policy stacking of uninsured motorist benefits is that RSA 268: 15-a, the uninsured motorist statute, requires such a result. We disagree.

To a degree, uninsured motorist coverage is vehicle-related, *Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.*, 120 N.H. 73, 76, 411 A.2d 1101, 1103 (1980). Moreover, the terms of the statute, "[n]o policy shall be issued . . . ," are clearly policy-related. In this case there is one policy that provides the plaintiff with uninsured motorist benefits of $20,000/$40,000. RSA 268:15-a provides in pertinent part:

> "[n]o policy shall be issued . . . unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed . . . under this chapter [$20,000/40,000] for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ."

The insurance policy in this case provided $20,000/$40,000 uninsured motorist coverage as required by law and the statute does not mandate an intra-policy stacking of uninsured motorist benefits resulting in $40,000/$80,000 coverage. The burden of purchasing additional uninsured motorist coverage in amounts greater than $20,000/$40,000 is placed upon the insured. RSA 268:15-a I; *see Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.*, 120 N.H. 73, 76, 411 A.2d 1101, 1103 (1980).

Plaintiff argues strenuously that the legislative intent supports his position. We can find no evidence that our legislature intended the result urged by the plaintiff, nor has he cited any such evidence. *But see Courtemanche v. Lumbermens Mut. Cas. Co.*, 118 N.H. 168, 385 A.2d 105 (1978) (a two-policy case). Rather, the plaintiff relies on cases in other jurisdictions in support of this contention. We have, however, already taken notice of the fact that many of the uninsured motorist statutes in other states vary from our own. *Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co. supra.* Moreover, we note that at least one state legislature has enacted an anti-stacking statute in response to a court decision in favor of intra-policy stacking. FLA. STAT. ANN. § 627.4132 (West 1977); *Gillette v. State Farm Mut. Auto. Ins. Co.*, 374 So. 2d 525 (Fla. 1979) (holding statute constitutional); *State Farm Mut. Auto. Ins.*

*Co. v. Wimpee,* 376 So. 2d 20 (Dist. Ct. of App. Fla. 1979) (applying the statute and discussing cases prior to statute). Maryland has also adopted an anti-stacking statute. MD. ANN. CODE of 1957 Art. 48A § 543; *Yarmuth v. Government Emp. Ins. Co.,* 407 A.2d 315 (Md. 1979); *see also Citizens Ins. Co. of America v. Tunney,* 91 Mich. App. 223, 283 N.W. 2d 700 (1979). For these reasons we decline to tread on the treacherous ground of examining the legislative intent surrounding adoption of uninsured motorist statutes in other states, particularly when our statute is clear and unequivocal.

■ The answer to the second question is "no."

■ The last question is whether the plaintiff is entitled to stack the medical payment benefits within the single policy. The "Expenses for Medical Services" section of the policy is identical to that which we considered in *Eckert v. Green Mt. Ins. Co.,* 118 N.H. 701, 394 A.2d 55 (1978), as is the applicable limits of liability clause. Because the plaintiff was an insured in an owned vehicle, he concedes, as he must, that *Eckert* is controlling unless we should decide to overrule it. This we decline to do. Only recently, in *Shea v. United Services Auto Assoc.,* 120 N.H. 106, 108, 411 A.2d 1118, 1119 (1980), we pointed out that *Eckert* is still the law in this State.

The answer to the third question is "no."

*Remanded.*

KING, J., did not sit; DOUGLAS, J., dissents only as to question 2; the others concur.

DOUGLAS, J., dissenting only as to question 2.

The limitation of liability clause is ambiguous because it provides that the "limits" stated in the "declarations" are the "total limit of the company's liability for all damages." The policy at issue has a declarations page that provides:

"Uninsured Motorists:
$20,000 ea. person—$40,000 ea. occurrence [1]     .50
$20,000 ea. person—$40,000 ea. occurrence [2]     .50"

Thus on the face of the policy two premiums and two amounts appear in the declarations of coverage amounts section. If the company wished to clearly limit liability, it could have provided plain prefatory language to the effect that "Regardless of the number of vehicles to which this policy applies. . . ." *See, e.g., Barnes v. Government Employees Ins. Co.,* 142 Ga. App. 377, 236

S.E. 2d 9 (1977); *Pettid v. Edwards*, 195 Neb. 713, 240 N.W. 2d 344 (1976).

It is an anomaly that if the same two premiums were paid to two *different* companies, we would permit *inter*-policy stacking of "as many uninsured motorist policies as are applicable to him, up to his total damages", *Courtemanche v. Lumbermens Mut. Cas. Co.*, 118 N.H. 168, 173, 385 A.2d 105, 108 (1978), but because the two different coverages were both purchased from the *same* insurer, we do not. "The mere form of a policy—a combination coverage— should not be the predicate for an exclusion of additional coverage." *Tucker v. Government Employees Ins. Co.*, 288 So. 2d 238, 242 (Fla. 1974).

Further, the result in this case defeats the reasonable expectation of the insured:

> "Moreover, an insured owning two automobiles is clearly entitled to buy from an insurer a separate policy for each vehicle and thereby automatically have two coverages available for recovery. [citations omitted]. It is reasonable to expect the same coverage where comparable premium dollars are paid to insure the same two cars, for convenience, under a single policy. A combination coverage should not be the predicate for an exclusion of coverage [citations omitted]. Such a result would allow a simple change in form to defeat the insured's reasonable expectation, as well as the substance of the law."

*Allstate Ins. Co. v. Maglish*, 586 P.2d 313, 315 (Nev. 1978).

The following courts have come to the same conclusion. *Traveler's Ins. Co. v. Pac*, 337 So. 2d 397, 398 (Fla. App. 1976):

> "Stacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere."

*Curran v. Fireman's Fund Ins. Co.*, 393 F. Supp. 712 (D. Alaska 1975); *Lambert v. Liberty Mutual Ins. Co.*, 331 So. 2d 260 (Ala. 1976); *Yacobacci v. Allstate Ins. Co.*, 33 Conn. Sup. 229, 372 A.2d 987 (1976); *United Security Ins. Co. v. Mason*, 59 Ill. App. 3d 982, 376 N.E. 2d 653 (1978); *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 370 N.E. 2d 1044 (1977); *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969); *Fletcher v. Aetna Casualty &*

*Surety Co.,* 80 Mich. App. 439, 264 N.W. 2d 19 (1978); *Citizens Mutual Ins. Co. v. Turner,* 53 Mich. App. 616, 220 N.W. 2d 203 (1974).

As Professor Keeton has stated, the theory of reasonable expectations insures that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." R. KEETON, BASIC TEXT ON INSURANCE LAW § 6.3(a) at 351 (1971).

> "By permitting the insured to stack his coverages, this Court has simply honored the reasonable expectation of the 'named insured' that his payment of an additional premium will result in increased coverage for those falling within the definition of the 'named insured', and where an expectation of this nature is in conflict with a limiting clause in the policy, the resulting ambiguity must be resolved in favor of the insured due to the nature of insurance contracts. *See generally* Note, *Insurance-Stacking-Multiple Recovery Permitted Under Single Policy Insuring More Than One Vehicle,* 7 U. Rich. L. Rev. 385 (1972). As explained by Professor Keeton '[i]nsurance contracts continue to be contracts of adhesion under which the insured is left little choice beyond electing among standardized provisions offered to him. . . .' R. KEETON, BASIC TEXT ON INSURANCE LAW § 6.3(a), at 350 (1971)."

*Lambert, supra* at 263.

Separate premiums were charged and, as this court held earlier this year, we "see no reason why the insured cannot stack coverage . . . in return for the premiums paid" to the same insurer. *Shea v. United Services Automobile Ass'n,* 120 N.H. 106, 411 A.2d 1118 (1980) (medical payments stacking). *See also Moomaw v. State Farm Mutual Automobile Ins. Co.,* 379 F. Supp. 697 (S.D.W.Va. 1974); *Employers Liability Assurance Corp., Ltd. v. Jackson,* 289 Ala. 673, 270 So. 2d 806 (1972); *Phoenix Ins. Co. v. Stuart,* 289 Ala. 657, 270 So. 2d 792 (1972); *Breaux v. Government Employees Ins. Co.,* 373 So. 2d 1335 (La. App. 1979); *Langston v. Allstate Ins. Co.,* 40 Md. App. 414, 392 A.2d 561 (1978); *Ehlert v. Western National Mutual Ins. Co.,* 296 Minn. 195, 207 N.W. 2d 334 (1973).

> "It is true that such holding results in permissible recovery exceeding what he would have received if the

uninsured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium."

*Van Tassel v. Horace Mann Mutual Ins. Co.*, 296 Minn. 181, 187, 207 N.W. 2d 348, 352 (1973). For a similar argument see A. WIDISS, A GUIDE TO UNINSURED MOTORIST COVERAGE § 2.60 at 112 (1969):

"It is true, as some insurers have argued that if this approach to the indemnification is adopted, an insured who is covered by more than one uninsured motorist endorsement will be better off than he would have been had he been injured by a negligent motorist carrying the minimum coverage specified by the financial responsibility laws. However, the conclusion which insurance companies draw from this—that they should be allowed to reduce their liability—does not necessarily follow. A premium has been paid for each of the endorsements and coverage has been issued. It seems both equitable and desirable to permit recovery under more than one endorsement until the claimant is fully indemnified. This is not the same as stacking or pyramiding of coverages—that is, where a claimant recovers several times over for his injuries—which is appropriately criticized and which insurance companies should be entitled to curtail by limitations on the extent of various coverages."

Finally, I would note that the majority opinion runs counter to the clear trend in the past five years in favor of intra-policy stacking. According to Davis, *Stacking of Uninsured Motorist Insurance*, N.H. BAR ASS'N CLE HANDBOOK 33, 111–112 (1980), the following states first adopted intra-policy stacking or reaffirmed an earlier adoption since 1976: Nevada (1978), Hawaii (1978), Arkansas (1978), Maryland (1978), Michigan (1978), Connecticut (1978, 1976), Illinois (1978, 1977), Washington (1978, 1977), Mississippi (1978), Pennsylvania (1978), Missouri (1976), Montana (1979, 1976), Delaware (1977), Alabama (1976), Louisiana (1978), Florida (1977), Kentucky (1979). This brings to twenty-two the number of such states and clearly portends the future in this area. *Id.* at 145 n.40.