Grafton
No. 83-401

### Royal Burnham, d/b/a Royal Burnham Logging

### v.

### Chester A. Downing

July 27, 1984

*Edwin W. Kelly*, of Plymouth, by brief and orally, for the plaintiff.

*Ray & Hopkins P.A.*, of Plymouth (*William H. Hopkins* on the brief and orally), for the defendant.

BROCK, J.   The principal issue to be considered in this appeal is whether the defendant, Chester A. Downing, was an employee of the plaintiff, Royal Burnham, d/b/a Royal Burnham Logging when, on December 27, 1982, he injured his eye. The New Hampshire Deputy Labor Commissioner found that Downing was an employee and was entitled to workers' compensation benefits under RSA chapter 281 by virtue of his loss of eyesight in one eye. Burnham, alleging that Downing was an independent contractor, appealed to the Superior Court (*Johnson*, J.), which approved a Master's (*Thomas M. Pancoast*, Esq.) finding, after a trial, that Downing was an employee at the time of his injury. Burnham then brought this appeal. For the following reasons, we affirm.

Burnham, as a sole proprietor, was engaged in a logging operation in Rumney. On December 20, 1982, Downing began working for Burnham as a "chopper." Downing's principal duty was to fell and limb trees to be skidded out of a wood lot. The record does not describe how the injury occurred, but the parties stipulated before the master that the injury occurred at about noon on December 27, 1982, while Downing was chopping in the woods.

In determining whether an individual is an employee or an independent contractor for purposes of workers' compensation benefits, the court employs a "totality of the circumstances" test. *Hamel Real Estate, Inc. v. Shepherd*, 121 N.H. 733, 735, 433 A.2d 1320, 1321 (1981); *Walker v. Charles DiPrizio & Sons*, 115 N.H. 652, 654, 348 A.2d 355, 357 (1975). Numerous factors are considered, with the presence or absence of one or more factors not necessarily conclusive as to the existence of an employee versus an independent

contractor relationship. *See* RESTATEMENT (SECOND) OF AGENCY § 220 (1958). The determination that the relationship existing between the parties was or was not that of employer/employee, therefore, depends upon the facts of each case.

■ Though the record presents indicia of both relationships, the "findings and rulings of the trial court must be sustained unless they are lacking in evidential support or tainted by error of law." *Town of Goffstown v. Morgrage*, 122 N.H. 591, 596, 448 A.2d 385, 388 (1982); *see also Walter v. Hagianis*, 97 N.H. 314, 316, 87 A.2d 154, 157 (1952). The record before us reveals no error of law, and supports the master's finding that Downing was an employee of Burnham at the time of his injury and not an independent contractor.

■ There was evidence that: (1) Downing had never before worked as a chopper in a logging operation which used skidders, and that either Burnham or Burnham's son, David, described for Downing the techniques of cutting for a skidder; (2) the hours that Downing worked were determined by the hours that were worked by David, who operated the skidder; (3) Burnham explained to Downing what trees he wanted and did not want cut; (4) Burnham told Downing to cut hardwood or softwood, depending upon what the mill would accept from Burnham; (5) although Downing supplied his own saw, which he had borrowed from a third party, Burnham owned the skidder and the truck used to haul the wood to the mill; (6) Downing believed he was an employee and was never told that he would be considered an independent contractor; and (7) Burnham made no promise or agreement that Downing would have the absolute right to finish cutting trees on the particular lot involved. From this evidence, the master could reasonably conclude that Downing was primarily providing labor for Burnham's operation and was an employee.

■ The plaintiff's argument that RSA 281:4-a requires a finding that Downing was a subcontractor, thus relieving the plaintiff from responsibility for providing workers' compensation coverage for Downing himself, is without merit. RSA 281:4-a provides that contractors as defined therein shall be liable for the workers' compensation for employees of their subcontractors. *See Walker v. Charles DiPrizio & Sons*, 115 N.H. at 655, 348 A.2d at 358. The relevancy of RSA 281:4-a is determined only after the court determines the relationship between the parties. *See id.* RSA 281:4-a does not preclude a finding of an employer/employee relationship.

Finally, we conclude that the master correctly calculated Downing's average weekly wages in order to establish the amount of

Downing's weekly workers' compensation. Downing only worked for four days before his injury: three days plus the half-day before Christmas (Monday, December 20 until Thursday noon, December 23, 1982), and the morning of the day he was injured (Monday, December 27, 1982). Burnham initially argued that because Downing worked during two separate work weeks and was given two checks, one for $220, and the second for $200, his average weekly wage should be $210. Downing's weekly compensation would then be 66 2/3 percent of this amount. *See* RSA 281:23, II(a) (now RSA 281:23, II (Supp. 1983)).

RSA 281:2, VII(1) provides:

> "Average weekly wages . . . shall be computed by taking the gross earnings of the injured employee in the service of the same employer during the preceding 12 weeks, or a longer period, not to exceed one year, if more favorable to the injured, divided by the number of weeks. *Where by reason of the shortness of time during which the employee has been in the employment of his employer* or the nature or term of the employment, *it is inequitable to compute the average weekly wages as previously defined, regard may be had to the rate of pay designated in his agreement of employment* or to the gross earnings of persons in the same grade, employed at the same work by the same employer, or if there is no person so employed, by a person of the same grade, employed in the same class of employment in the same locality."

(Emphasis added.)

Downing's rate of pay was $14 per thousand feet of millable lumber and $8 per cord for tree length pulpwood. The master found that Downing was paid $420 for his four days of work, which would result in weekly wages of $520. We conclude that, given the shortness of time during which Downing had been employed by Burnham, and the fact that neither of the alleged work periods constituted a full week of work for Downing, it would be inequitable to compute the average weekly wages as suggested by the plaintiff. Given the circumstances of this case, we cannot say that the master abused his discretion in computing Downing's average weekly wage as he did.

Downing's weekly workers' compensation benefits, however, were limited to $279 by the then current regulations of the department of labor. *See* RSA 281:23, II(a) (now RSA 281:23, II (Supp. 1983)). We reject Downing's contention that the 1983 amendment to

RSA 281:23, II(a), increasing the maximum compensation to 150 percent of the State's average weekly wage, requires that Downing's weekly compensation rate be increased to $346.66. *See* Laws 1983, 392:11. We note that the amendment became effective on August 21, 1983, two days before the superior court issued its decree approving the master's report in the present case.

However, Downing's rights and Burnham's liability became fixed as of the date of the injury. *Cote v. Company,* 85 N.H. 444, 446, 160 A. 101, 102 (1932); *accord Lessard v. City of Manchester Fire Dep't,* 118 N.H. 43, 47, 382 A.2d 365, 367 (1978); *cf. Ranger v. N.H. Youth Dev. Center,* 117 N.H. 648, 377 A.2d 132 (1977) (in a case in which injury and loss occur years apart, in determining the scheduled permanent impairment award, the average weekly wage shall be based upon the employee's wages as of the date of prompt medical disclosure regarding the loss). In the absence of any indication that this 1983 amendment was intended to have a retroactive effect, it is not applicable to injuries occurring before its adoption. *See Opinion of the Justices,* 99 N.H. 509, 511, 112 A.2d 48, 50 (1955); *accord Lessard v. City of Manchester Fire Dep't,* 118 N.H. at 47, 382 A.2d at 367–68.

■■ We also reject, however, Burnham's contention, raised in his supplemental brief, that Downing's weekly compensation rate should be adjusted downward. Although we are without a record of the hearing before the department of labor, the plaintiff states that the deputy commissioner of labor ruled that Downing was entitled to weekly compensation based on an average weekly wage of $200. Burnham argues that the department of labor is the final arbiter on the issue of the amount of the award and that the superior court has no jurisdiction to alter the compensation award. We disagree.

RSA 281:37, I provides in pertinent part:

"An appeal from a decision of the commissioner, or his authorized representative, may be taken to the superior court no later than 30 days from the date of such decision .... At such hearing *a full trial shall be had before a justice of the superior court,* without jury, *and* within 30 days thereafter *the court shall make its award* setting forth its findings of fact and the law applicable thereto . . . ."

(Emphasis added.) "The general purpose of RSA 281:37 is to permit a substitution of the conclusions of the court for those of the commissioner." *Charles & Nancy, Inc. v. Zessin,* 118 N.H. 556, 558, 391 A.2d 880, 882 (1978). We conclude that encompassed within the statutory provision for a full trial in the superior court, which thereafter

makes *its* award, is the authority to adjust the amount of the award based upon the evidence presented and the applicable law. *See Knight Broadcasting Co. v. Kane*, 109 N.H. 565, 258 A.2d 355 (1969).

*Petition of Gunzel*, 124 N.H. 495, 471 A.2d 1189 (1984), is not relevant. In *Petition of Gunzel*, we addressed RSA 281:26, IV, which provides that the labor commissioner shall determine the amount of compensation and/or percentage of permanent partial loss on the basis of competent medical evidence and that those findings shall be final. *Id.* at 498, 471 A.2d at 1190; RSA 281:26, IV. The present dispute does not concern a permanent partial loss.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.