Strafford
No. 88-111

ANITA L. GANNETT, PERSONAL REPRESENTATIVE,
ESTATE OF NOEL J. RIOUX

v.

MERCHANTS MUTUAL INSURANCE COMPANY

December 12, 1988

*Cooper, Hall, Whittum & Shillaber P.C.*, of Rochester (*Donald F. Whittum* on the brief and orally), for the plaintiff.

*Hall, Morse, Gallagher & Anderson,* of Concord (*Douglas J. Miller* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Merchants Mutual Insurance Company (Merchants), appeals from an order of the Superior Court (*Nadeau,* J.) finding that the plaintiff, Anita L. Gannett, the personal representative of the estate of her son, Noel J. Rioux, is entitled to "stack" the uninsured motorist benefits for each automobile insured under a policy issued by the defendant. This order effectively rescinded an earlier settlement agreement entered into by Gannett and Merchants. The court premised its order of rescission on a finding of "mutual mistake," and allowed for "stacking" based on our decision in *Cacavas v. Maine Bonding & Casualty Co.*, 128 N.H. 204, 512 A.2d 423 (1986). For the reasons stated below, we reverse.

On September 27, 1985, Noel J. Rioux was killed while riding as a passenger in an uninsured automobile owned and operated by a third party. At the time of his death, Rioux, a minor, was residing with his mother, Anita Gannett and his stepfather, Arthur H. Gannett, Jr. He was therefore, an "insured" within the meaning of the automobile insurance policy held by the Gannetts and issued by Merchants. At the time of the accident, this policy covered four automobiles. The Gannetts, each of whom was a named insured on the policy, paid a separate premium for each automobile insured under the single policy. The policy provided for liability and uninsured motorist coverage limits of $25,000 each person, $50,000 each occurrence.

On or about October 10, 1985, Anita Gannett notified Merchants of the claim arising from her son's death. She was informed by an insurance adjuster from Merchants, on or about October 28, 1985, that she had to obtain appointment as administratrix of her son's estate before any payments could be made. On or about November 20, 1985, after receiving the requested appointment papers from

Mrs. Gannett, the Merchants' adjuster contacted her and they discussed the insurance claim. The trial court found that during this conversation, the adjuster mistakenly believed that the Gannetts' policy with Merchants insured only one automobile.

On November 22, 1985, Merchants sent a check in the amount of $25,000 to Anita Gannett. This check was intended to represent payment under the uninsured motorist provision of the policy. Merchants also sent a check for $1,000, representing payment under the medical payment provision of the policy. Merchants' obligation under the medical payment provision is not an issue in this appeal. In addition to the checks, Merchants sent a release and cover letter, which requested that Mrs. Gannett sign and return the release. The release stated that the $25,000 payment was "in full satisfaction of the Company's obligations." Although it is unclear when Mrs. Gannett signed the release, it is undisputed that she did eventually sign it, although it was never returned to Merchants. On or about November 27, 1985, Mrs. Gannett deposited the $25,000 check.

On June 5, 1986, this court decided the case of *Cacavas v. Maine Bonding & Casualty Co.*, 128 N.H. 204, 512 A.2d 423. In that case we held that an insured was entitled to "stack" the uninsured motorist benefits for two cars covered by a single policy, where the policy issued to the insured was ambiguous with regard to its coverage. On or about August 19, 1986, citing *Cacavas* as authority, Mrs. Gannett, through counsel, demanded an additional $75,000 from Merchants. Receipt of this sum would have brought the plaintiff's total recovery under the uninsured motorist provision to $100,000, or $25,000 for each vehicle covered by the policy. Although Merchants does not dispute that plaintiff's damages exceeded $100,000, it notified Mrs. Gannett on August 27, 1986, that it would not make that payment.

On October 7, 1986, Mrs. Gannett filed a petition for declaratory judgment in the superior court, requesting a finding that she was entitled to "stack" the uninsured motorist benefits contained in her policy, and therefore receive an additional $75,000 from Merchants. A hearing was held on February 17, 1988. On February 22, 1988, the superior court found in favor of the plaintiff on the issue of "stacking." It did not order payment by Merchants of the additional sum, however, noting Merchants' claim of a right to contest liability and raise the issue of comparative negligence.

The court based its holding in favor of the plaintiff on two grounds. First, the court found:

"At the time the defendant's representative, Mr. Paitey, and the plaintiff agreed to a payment of $25,000 in exchange for an execution of the release the parties were under the mutually mistaken belief that the accident was covered by one insurance policy for one vehicle with an uninsured motorist limitation of $25,000. It is clear that there was no negotiated settlement nor was there any discussion with respect to the uninsured motorist coverages other than the company's representation that the coverage amounted to $25,000."

The court further found that the claim in the instant case "is governed by *Cacavas v. Maine Bonding* . . ." and that "[t]he policy issued to the plaintiffs in this case is ambiguous in that its limits of liability clause can reasonably be interpreted to mean that liability was not limited to the amount declared for only one vehicle, but, rather, applied to all four vehicles."

The first question we must address is whether Mrs. Gannett, by accepting the check for $25,000 tendered by Merchants, thereby accepted the condition that the payment fully satisfied Merchants' obligation under the uninsured motorist provision. The trial court found that Mrs. Gannett and Merchants "agreed to a payment of $25,000 in exchange for an execution of the release." Based on this agreement, Merchants tendered a check to Mrs. Gannett for $25,000; it also sent a release which unambiguously stated that the $25,000 payment would constitute "full satisfaction of the Company's obligations to the above named claimant under the Personal Injury Protection Coverage as a result of the above described accident." By cashing a check tendered on the express and unambiguous condition that the payment would constitute full satisfaction of Merchants' obligation under the uninsured motorist provision, a condition to which Mrs. Gannett had previously agreed, she was bound by that condition. *See* 6 A. CORBIN, CORBIN ON CONTRACTS § 1279 (1962); *Post Road Realty, Inc. v. Zee-Bar, Inc.*, 117 N.H. 136, 138–39, 370 A.2d 282, 284 (1977); *Kramas v. Beattie*, 107 N.H. 321, 324, 221 A.2d 236, 237–38 (1966); *Corey Steeplejacks Co. v. Cray*, 106 N.H. 126, 129–30, 206 A.2d 617, 619–20 (1965).

The plaintiff argues, however, that she is not bound by the condition in the release, as she never returned the release to Merchants. The return of the release, however, is irrelevant, as it was the acceptance of a check offered on the condition that it constitute payment in full, rather than the signing of the release, which bound Mrs. Gannett. It is also irrelevant whether she

actually read the release, when the release clearly and unambiguously stated the condition, and when Mrs. Gannett had the opportunity to read it before cashing the check. *See Barnes v. New Hampshire Karting Ass'n, Inc.*, 128 N.H. 102, 108, 509 A.2d 151, 154 (1986). The trial court's finding that there had been no "negotiated settlement" does not affect our holding, as the "absence of extended 'give and take' negotiation is unimportant," where "the offer and acceptance is clearly on the record." *Decato Brothers, Inc. v. Westinghouse Credit Corp.*, 129 N.H. 504, 511, 529 A.2d 952, 956 (1987).

█ █ Our determination that in November, 1985, Mrs. Gannett accepted the payment of $25,000 as payment in full satisfaction of Merchants' obligation under the uninsured motorist provision leads us to examine the court's holding that both Mrs. Gannett and the insurance adjuster from Merchants were under a "mutually mistaken belief" when they agreed to the $25,000 payment, thus forming a basis for rescission. The court held that both the insurance adjuster and Mrs. Gannett mistakenly believed that "the accident was covered by one insurance policy for one vehicle with an uninsured motorist limitation of $25,000" when, in fact, the insurance policy covered four vehicles. We are bound by these findings of fact unless they are "lacking in evidential support or tainted by error of law." *Liberty Mut. Ins. Co. v. Custombilt*, 128 N.H. 167, 169, 512 A.2d 1098, 1099 (1986) (quoting *Burnham v. Downing*, 125 N.H. 293, 296, 480 A.2d 128, 130 (1984)). Although rescission may be appropriate when there has been a "mutual mistake of a past or present fact, material to the agreement . . . ," *Poti v. Company*, 83 N.H. 232, 234, 140 A. 587, 589 (1928) (citing 34 Cyc. 1058, 1059), this mistake of fact on the part of Mrs. Gannett and the insurance adjuster as to the number of vehicles covered by Merchants cannot form the basis for rescission.

█ In determining whether there has been a "mutual mistake" of fact, justifying rescission, it is the understanding of the parties, not the understanding of the agent who made the agreement on behalf of the principal, which we consider. In most cases where the principal has knowledge of a fact, or notice of it has been given, but the agent acts within his authority without such knowledge, the principal will be held liable for the acts of the agent. *See* SEAVEY, STUDIES IN AGENCY 64 (1949). If we will not allow the principal to escape from a contract based on his agent's lack of knowledge, we should not allow the third party to be relieved from a contract based on the agent's, rather than the principal's, lack

of knowledge. There is no claim that the agent intentionally misrepresented to the plaintiff that there was only one car insured under the single policy. If this were the case, then the case would be one for rescission because of misrepresentation and not for mutual mistake. *See* D. DOBBS, REMEDIES § 9.4 (1973); *Bursey v. Clement*, 118 N.H. 412, 416, 387 A.2d 346, 349 (1978).

In the instant case, Merchants was the principal; the adjuster was acting as an agent. Although the adjuster may have been unaware that the policy issued to the Gannetts insured four cars, Merchants most surely was aware. There was no claim that Merchants did not have a record accurately stating the number of cars insured. Merchants may be considered to have knowledge of the information contained in its records. *See* SEAVEY, *supra* at 61–62.

The argument for rescission based on the mutual mistake of Mrs. Gannett and the insurance adjuster fails for another reason as well. The mutual mistake must involve a *material* fact before relief will be granted. *See Maltais v. National Grange Mut. Ins. Co.*, 118 N.H. 318, 320, 386 A.2d 1264, 1265 (1978); *McIsaac v. McMurray*, 77 N.H. 466, 473, 93 A. 115, 118 (1915). Given the state of the law in November, 1985, when the agreement was made, concerning intra-policy "stacking" of uninsured motorist benefits, the number of cars which were insured under a single policy cannot be considered a "material" fact. *See infra* for discussion of law.

Plaintiff argues that relief may be granted because the parties made a "mistake of law" as well, which formed the basis of their agreement. Plaintiff claims that both she and Merchants mistakenly believed that the $25,000 payment constituted full satisfaction of Merchants' obligation under the uninsured motorist benefits; they "mistakenly" failed to recognize that the policy as written requires "stacking" of the uninsured motorist provision for each car insured under the policy, bringing Merchants' total obligation under the uninsured motorist provision to $100,000. Mrs. Gannett argues that, given several decisions of this court made prior to *Cacavas*, the belief by Mrs. Gannett and Merchants that payment of $25,000 fulfilled Merchants' legal obligation under the uninsured motorist provision in its entirety constitutes a "mistake of law."

This court has recognized that "rescission may be had for a mutual mistake as to the legal rights of the parties," *Healy v. Healy*, 76 N.H. 504, 505, 85 A. 156, 157 (1912), although we have noted the limitation of such a rule in the context of the "settlement of a controversy." *Id.* Yet, while a mistake of law may form the basis for rescinding an agreement, the judicial overruling of a precedent, or clarification of prior judicial decisions, does not. *See*

20 AM. JUR. 2d §§ 41, 235; *City of Newark v. Ladato*, 139 N.J. Eq. 471, 475, 51 A.2d 895, 898 (1947).

Mrs. Gannett, in arguing that she and Merchants made a mistake of law, relies principally on our holding in *Descoteaux v. Liberty Mutual Insurance Co.*, 125 N.H. 38, 480 A.2d 14 (1984). In that case, we held that an insured could stack uninsured motorist benefits which were contained in two separate policies written by the same carrier. Although our reasoning in *Descoteaux* formed the basis of our opinion in *Cacavas*, prior to our holding in *Cacavas*, there was no clear statement that the law permitted the stacking of uninsured motorist benefits when more than one car was insured under a single policy. In fact, there was law to the contrary. Several years before our decision in *Descoteaux*, this court decided *Grimes v. Concord General Mutual Insurance Co.*, 120 N.H. 718, 422 A.2d 1312 (1980), which holding was followed in *New Hampshire Insurance Co. v. Bell*, 121 N.H. 127, 427 A.2d 27 (1981). In *Grimes*, we held that an insured was not entitled to stack the uninsured motorist benefits contained within a single insurance policy. We emphasized the fact that the case involved a claim of intra-policy stacking and relied on that fact to help distinguish it from the situation in *Courtemanche v. Lumbermens Mutual Casualty Co.*, 118 N.H. 168, 385 A.2d 105 (1978), where we permitted an insured to stack the coverages of as many uninsured motorist policies as were applicable to him, up to his total damages. In distinguishing *Grimes* from *Courtemanche*, we emphasized that *Courtemanche* "dealt with uninsured motorist benefits but on an *inter*-policy basis . . . ." *Grimes, supra* at 720, 422 A.2d at 1314. (Emphasis in original.) *Grimes* involved the "*intra*-policy stacking of uninsured motorist benefits." *Id.* (Emphasis supplied.)

 Prior to our holding in *Cacavas*, the law as to intra-policy stacking of uninsured motorist benefits was unsettled. There was thus no "mistake of law" made at the time of the agreement between Merchants and Mrs. Gannett from which relief may be granted. A mistake in predicting how a court would decide a particular case if it were litigated does not constitute a mistake of law. A mistake in "prophecy or in opinion" does not justify rescission. *Poti v. Company*, 83 N.H. at 234, 140 A. at 589. (Citations omitted.) Mrs. Gannett's only "mistake," if any, was in failing to anticipate a later judicial determination which would be favorable to her. Were we to hold otherwise, every time this court made a decision which would have been favorable to a party had they not settled, the party would be able to rescind that settlement. Such a rule would bring great uncertainty to all agreements.

Our holding that Mrs. Gannett is not entitled to rescission of the settlement agreement based on a mistake of law is consistent with our decision in *Hodgdon v. Weeks Memorial Hospital*, 128 N.H. 366, 515 A.2d 1199 (1986). In that case we allowed the plaintiff a new trial after the statute of limitations, which had time-barred her earlier wrongful death action, was declared unconstitutional in a later case. We held that "plaintiff's counsel's reliance on the constitutionality of the two-year statute of limitations constituted 'accident, mistake or misfortune' within the meaning of RSA 526:1," the statute providing for the granting of a new trial, *Hodgdon, supra* at 369, 515 A.2d at 1201. Although plaintiff's counsel's reliance on the constitutionality of the two-year statute of limitations was held to constitute a "mistake" within the meaning of the new trial statute, our reasoning in that case does not compel the holding in this case that by failing to challenge the ruling that stacking was not permitted in intra-policy situations, held to be incorrect in *Cacavas*, Mrs. Gannett made a "mistake of law" such that rescission is appropriate. In *Hodgdon*, the plaintiff and defendant never *agreed* that the limitation period had run on the plaintiff's action. The plaintiff, there, had challenged the claim that the limitations period had run, by bringing suit, even if the plaintiff had not challenged the constitutionality of the limitations period. *Hodgdon v. Weeks Mem. Hosp.*, 122 N.H. 424, 445 A.2d 1116 (1982). In the instant case, the plaintiff and defendant reached an agreement that the payment of $25,000 fulfilled the defendant's obligation under the uninsured motorist provision. If the plaintiff, who should have known how many cars were covered by the single policy, had decided to contest the "stacking" issue, as was later done in *Cacavas*, stacking might have been permitted. The plaintiff here, however, accepted the rule of law that "stacking" was not allowed and voluntarily entered into a settlement agreement with Merchants.

Accordingly, we hold that the settlement agreement between Mrs. Gannett and Merchants should not be rescinded. Because we find that the agreement is controlling, we do not address the question raised by Mrs. Gannett whether we should apply our holding in *Cacavas* retroactively. We also do not address the issue whether, under the terms of the particular insurance policy involved in this case, "stacking" should be permitted.

*Reversed.*

BROCK, C.J., concurred in the result; the others concurred.