Hillsborough
No. 88-185

MERCHANTS INSURANCE GROUP

v.

MITCHELL WARCHOL d/b/a JUSTAM GENERAL CONTRACTOR
AND
WILLIAM AND DEBORAH DIMICK

July 14, 1989

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Andrew D. Dunn* on the brief and orally), for the plaintiff.

*Devine & Nyquist*, of Manchester (*Kevin C. Devine* and *Maureen E. Raiche* on the brief, and *Mr. Devine* orally), for the defendants William and Deborah Dimick.

*Moquin & Daley*, of Manchester (*Richard C. Moquin* on the brief), by brief for the defendant Mitchell Warchol d/b/a Justam General Contractor.

BROCK, C.J. The defendants, Mitchell Warchol d/b/a Justam General Contractor (Justam) and William and Deborah Dimick, appeal from a declaratory judgment entered by the Superior Court (*Goode*, J.), *see* RSA 491:22, ruling that an insurance policy issued to Justam by the plaintiff, Merchants Insurance Group, did not cover claims brought against it by the Dimicks. We affirm.

On September 3, 1986, Warchol, under the name Mitchell Warchol d/b/a Justam General Contractor, purchased a comprehensive general liability insurance policy from the plaintiff for his newly established construction contracting business. The policy provided that the plaintiff would

> "pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of
>
> "A. *bodily injury* or
> "B. *property damage*
>
> "to which this insurance applies, caused by an *occurrence.* . . ."

(Emphasis in original.) The policy defined "occurrence" as "an accident . . . which results in *bodily injury*" (emphasis in original). The bodily injury liability coverage was limited by exclusion (j), which provided that the insurance did not apply "to *bodily injury* to any employee of the insured arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury" (emphasis in original). An amendatory endorsement deleted exclusion (j) and replaced it with an exclusion providing that the insurance did not apply:

"(i)     to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* for which the *insured* may be held liable as an employer or in any other capacity;

"(ii)    to any obligation of the *insured* to indemnify or contribute with another because of damages arising out of the *bodily injury*; or

"(iii)   to *bodily injury* sustained by the spouse . . . of an employee of the *insured* as a consequence of *bodily injury* to such employee arising out of and in the course of his employment by the *insured*. . . ."

(Emphasis in original.)

In fall, 1986, defendant William Dimick asked Warchol for work. Dimick had no experience in the construction business; at the time he approached Warchol, he was a management trainee for Papa Gino's of America restaurants. Warchol agreed to hire him as a "laborer." Warchol told Dimick that Justam would pay Dimick $6.50 per hour, and that Dimick would be a "subcontractor," responsible for his own taxes, social security payments, and health insurance. Dimick worked exclusively and continuously for Justam from approximately the second week of October, 1986, until the time of his accident in December, 1986.

During this period, Dimick never supplied any of the work materials or specialized equipment used in Justam's projects, although he did provide his own basic hand tools. Dimick always worked under the close supervision of either Warchol himself or another man hired by Justam.

On December 12, Warchol directed Dimick, who had never done any roofing before, to help roof a building Justam was constructing in South Weare. Dimick fell from the structure onto frozen ground and suffered serious injuries. Dimick then filed a writ of summons against Justam, alleging

"that on or about December 12, 1986, the plaintiff, William Dimick, during the course of *employment* for the defendant, was working on the roof of the American Legion Hall in South Weare, New Hampshire; that at all times pertinent hereto, the defendant was under a duty to provide the plaintiff with a safe work place, to provide proper supervision for a *relatively inexperienced worker*, to provide proper safety training and equipment for a worker expected to be working upon a rooftop, and to take reasonable precautionary and safety measures to avoid the foreseeable risk of serious bodily injury to *employees* working on rooftops. . . ."

(Emphasis added.) Deborah Dimick brought a separate count for loss of consortium in the same writ.

The plaintiff filed a petition for declaratory judgment in the superior court, requesting a ruling that "coverage is not afforded for the Dimick claims against Warchol" under the policy it had issued. Following a bench trial held on April 14, 1988, the court ruled that "Warchol had no reasonable expectation of coverage for claims arising out of injury to persons in the position of Dimick" and granted the plaintiff's petition.

The defendants contend on appeal that the trial court erred in failing to apply the "reasonable expectations rule" and that a reasonable person in the position of the insured would not have understood the policy to exclude coverage for bodily injury claims brought against him by one he believed to be a subcontractor. The defendants also assert that the trial court erred in basing its holding on an irrelevant and inaccurate finding that Dimick was an employee. Finally, the defendants argue that the trial court erroneously relied upon subsequent dealings between the parties in interpreting the insurance policy.

In a declaratory judgment action to determine whether an insurance policy covers a pending claim, the burden of proving that no coverage exists rests upon the insurer. RSA 491:22-a; *see Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982); *Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 762, 435 A.2d 507, 509 (1981). Furthermore, if insurance policy language is ambiguous, it is construed in favor of the insured. *Town of Epping supra*; *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 985 (1980). We agree with the trial court, however, that the exclusions in Justam's policy

were not ambiguous. *See Continental Ins. Co. v. Seppala & Aho Const. Co., Inc.,* 121 N.H. 374, 377, 430 A.2d 157, 159 (1981).

We therefore determine whether coverage is provided by interpreting the insurance policy "from the standpoint of the average layman 'in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.'" *Brown v. City of Laconia,* 118 N.H. 376, 378, 386 A.2d 1276, 1277 (1978) (quoting *Aetna Ins. Co. v. State Motors,* 109 N.H. 120, 125, 244 A.2d 64, 67 (1968)); *Karol v. N.H. Ins. Co.,* 120 N.H. 287, 289–90, 414 A.2d 939, 941 (1980). "This is clearly an objective standard." *Karol, supra* at 290, 414 A.2d at 941. In particular, if an insurance policy contains an exclusion purporting to limit a broad general grant of coverage, the exclusion must be "in terms which would effectively convey [it] to a reasonable person in the position of the insured." *Royal Globe Ins. Co. v. Poirier,* 120 N.H. 422, 427, 415 A.2d 882, 885 (1980) (quoting *American Asbestos Textile Corp. v. American Mut. Liab. Ins. Co.,* 114 N.H. 806, 809, 330 A.2d 451, 454 (1974)).

Justam's policy unambiguously excluded from the plaintiff's broad grant of coverage for "damages because of . . . *bodily injury*" any damages resulting from "*bodily injury* to any employee of the insured arising out of and in the course of his employment by the insured. . . ." (Emphasis in original.) A reasonable person in the position of Justam would have understood this language to exclude from coverage claims brought by employees. Indeed, the defendants do not contest this point. Instead, they assert that Justam reasonably believed that the insurance policy provided coverage for claims brought by someone Justam believed to be an independent contractor. The policy did provide coverage for claims brought by independent contractors. It did not, however, provide coverage for a claim brought by an employee who the employer unreasonably believed to be a subcontractor. *See Karol supra.*

The trial court found that, considering the totality of the circumstances, Dimick was an employee, not, as he and Warchol assert, a subcontractor. *See Hamel Real Estate, Inc. v. Shepard,* 121 N.H. 733, 735, 433 A.2d 1320, 1321–22 (1981). This finding must be upheld unless lacking evidentiary support. *Burnham v. Downing,* 125 N.H. 293, 296, 480 A.2d 128, 130 (1984). Among the factors indicating that Dimick was an employee were the facts that he was subject to Justam's immediate control, that he was not engaged in a distinct business, that he was an unskilled "laborer" rather than a specialist, that Justam supplied the location and specialized tools for his work, that he was employed exclusively by Justam, and that

he was paid by the hour, not the job. *See* RESTATEMENT (SECOND) OF AGENCY § 220 (1958). The only factor indicating that Dimick was an independent contractor was his and Warchol's subjective belief, or at least their desire, that he be a subcontractor. *See id.* The evidence overwhelmingly supported the trial court's finding that Dimick was an employee. *See Burnham, supra* at 295–96, 480 A.2d at 130.

█ The trial court therefore correctly ruled that because Dimick was an employee, the policy did not provide coverage for claims due to bodily injury. We need not address the defendants' argument that the trial court admitted irrelevant evidence of dealings between the plaintiff and Justam that occurred subsequent to the signing of the insurance contract, because the trial court rejected the plaintiff's arguments based on that evidence.

*Affirmed.*

All concurred.