Bottomline v. Ingrum                    CV-95-246-M    08/26/96

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Bottomline Technologies, Inc.,
      Plaintiff

      v.                                          Civil No. C-95-246-M

L. Robert Ingrum,
      Defendant.


O R D E R


On August 13, 1993, Bottomline Technologies and L. Robert Ingrum entered into an "Account Executive Agreement," by which Ingrum became an account executive for Bottomline and acquired the non-exclusive right to promote and sell its products in certain areas of California. Approximately 18 months later, on February 15, 1995, Ingrum resigned from that position to accept employment with ACOM Computer, Inc., one of Bottomline's competitors. Subsequently, Bottomline brought this action, seeking damages for Ingrum's alleged breach of the agreement's covenant not to compete. Ingrum counterclaimed, asserting that Bottomline is wrongfully withholding certain sales commissions to which he is entitled under the agreement. Ingrum now moves for summary judgment with regard to his counterclaim for those commissions.

## Standard of Review

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact "is one `that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition."  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).  That burden is discharged only if the cited disagreement relates to a genuine issue of material fact.  Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993).

**Facts**

Bottomline Technologies, Inc. is a New Hampshire corporation with a principal place of business in Exeter, New Hampshire. It is a software development company that sells software, laser printers, and associated products for use in magnetic ink character recognition document printing. According to Bottomline's president, Daniel McGurl, Bottomline does business in a highly specialized niche market, in which only about six other companies compete. ACOM is one of those companies.

Robert Ingrum is a resident of California who has been involved in sales and sales management in the computer industry for his entire career. Prior to working with Bottomline, Ingrum worked for IBM for approximately 25 years. And, upon resigning from his position as an account executive for Bottomline, he became a sales manager for ACOM. Along with his letter of resignation, Ingrum submitted a summary of all commissions to which he claimed he was entitled under the agreement. He also included a list of all accounts which were seriously considering purchasing products from Bottomline and, therefore, which might give rise to additional commissions. In a letter dated February

3

20, 1995, Bottomline acknowledged that it would pay all "commissions due under the standard rules of the AE agreement."

The parties do not dispute that, following Ingrum's resignation, Bottomline paid him commissions totalling $11,342.78. Ingrum claims, however, that he is entitled to additional commissions in excess of $13,000. Bottomline disagrees, saying that at most, Ingrum is entitled to roughly $4,600 in commissions. To date, however, Bottomline has refused to tender those sums, arguing that because Ingrum breached the agreement's covenant not to compete, it is entitled to withhold any unpaid commissions as a set-off against the damages it claims to have suffered.

## Discussion

The agreement's covenant not to compete, which Bottomline says Ingrum violated, provides:

> Noncompetition. AE [i.e., Ingrum] warrants to BT that it does not currently sell or market any products that are competitive with any of the Products. AE agrees that, both during the term of this Agreement and continuing for a period of two (2) years thereafter, neither AE nor any of its officers, directors, shareholders, partners, employees, or agents will, either directly or indirectly, sell or market any products that are competitive with any of the Products.

4

Agreement, para. 6.  While the interpretation of that agreement is a question of law, whether Ingrum violated its provisions (assuming, of course, that it is enforceable under New Hampshire law) qualifies as a disputed issue of material fact.  See, e.g., Colonial Life Ins. v. Electronic Data Systems, 817 F.Supp. 235, 244 (D.N.H. 1993) (Typically, the existence of a breach of contract is a question of fact to be resolved by the trier of fact, based upon the unique circumstances of each case.).

Nevertheless, Ingrum claims that even if the covenant not to compete is valid and enforceable and even if he has violated that covenant, still Bottomline cannot lawfully withhold his commissions.  First, he points out that N.H. Rev. Stat. Ann. ("RSA") 275:48 expressly prohibits employers from withholding wages (including commissions) from an employee except in limited circumstances not applicable in this case.  However, whether Ingrum was an "employee" or an "independent contractor" of Bottomline is also a disputed issue of material fact.  See Burnham v. Downing, 125 N.H. 293, 295-96 (1984) (Determining whether an individual is an employee or an independent contractor is a question of fact, which turns upon factors unique to each case.).  Because RSA 275:48 protects only employees and not

independent contractors, its applicability in this case turns on the resolution of disputed material facts. Accordingly, the court cannot grant Ingrum's motion for summary judgment on that basis.[1]

Next, Ingrum argues that New Hampshire common law does not permit an employer to withhold commissions as a set-off against unliquidated damages allegedly suffered as a result of an employee's breach of his or her duty of loyalty. Wallace v. Antrim Shovel Co., 44 N.H. 521, 523-24 (1863). In Wallace, the New Hampshire Supreme Court held that, absent a clear and express agreement between the parties, a former employer could not withhold commissions from its former employee as a set-off against damages allegedly sustained when the employee breached an implied obligation to serve the employer faithfully. The court held that, "the implied engagement to serve the defendant faithfully was at most but part of the consideration of the

---

[1] Ingrum vigorously argues that he was an employee, rather than an independent contractor, of Bottomline. However, the agreement specifically provides that Ingrum "shall serve BT as an independent sales contractor, . . . and under no circumstances shall [Ingrum] be deemed to be a partner, employee, or agent of BT." Agreement, para 4. Moreover, Ingrum himself has repeatedly characterized his status as that of an independent contractor. See plaintiff's Exhibit B (Ingrum's resume) and Exhibit C (letter from Ingrum dated March 18, 1995).

defendant's promise [to pay a commission on all sales], and, we think, as the breach of it may be compensated in damages, it is no defense to this suit."  Id. at 524.

Here, however, the provision of the agreement which Ingrum allegedly violated was an express, rather than implied, condition of the contract -- the obligation not to compete with Bottomline for a period of two years.  Additionally, unlike the parties in Wallace, Ingrum and Bottomline specifically agreed that Bottomline would be entitled to withhold Ingrum's Commissions as a set-off against certain sums owed to it by Ingrum:

> (c)  All Commissions will become due and payable to BT by AE on the fifteenth (15th) day of each month with respect to the total of the net sales prices received by BT during the previous month on sales of Products made by BT for which AE is entitle to a Commission; provided, that BT shall be entitled to set off against any such Commissions: . . .
>
> > (ii) any amounts now or hereafter becoming due to BT from AE under the terms of this Agreement or otherwise."

Agreement, para. 3(c) (emphasis added).

Accordingly, the legally relevant facts presented in this case would seem to be distinguishable from those addressed in

7

Wallace.  Nevertheless, even if the court finds that the holding in Wallace is controlling, Bottomline's ability to withhold Ingrum's commission's as a set-off against damages sustained because of his alleged violation of the covenant not to compete will likely turn upon the resolution of the following factual question: Was Ingrum's performance under the covenant not to compete an "essential" element of the agreement?  Related to that inquiry is the question whether the parties employed sufficiently specific language, demonstrating a clear intent to permit Bottomline to withhold commissions in the event of a breach of the covenant not to compete, to be enforceable.  See Wallace, 44 N.H. at 523 ("[T]o justify a construction that should enable a party to hold the fruits of a contract without compensation, upon the ground that the other party had failed to perform some unessential stipulation, which might well be compensated in damages, would, to say the least, require language much more explicit than is found in this contract.") (emphasis added). Without further factual development of the record, the court cannot rule, as a matter of law, on Bottomline's ability to withhold the disputed commissions as a set-off.

8

Finally, even if the holding in <u>Wallace</u> does not control the outcome of this case, the court must still determine whether the agreement's set-off provision actually authorizes Bottomline to withhold Ingrum's commissions in this particular case.  Under New Hampshire law, the interpretation of a contract presents a mixed question of law and fact; while the interpretation of unambiguous contractual provisions presents a question of law, the interpretation of ambiguous provisions presents questions of fact.  And, a clause contained in a contract "is ambiguous when the contracting parties reasonably differ as to its meaning." <u>Laconia Rod & Gun Club v. Hartford Accident and Indemnity Co</u>, 123 N.H. 179, 182 (1983).  Here, the parties plainly disagree with regard to the proper interpretation of the phrase "any amounts now or hereafter becoming due to BT from AE under the terms of this Agreement or otherwise" and whether it empowers Bottomline to withhold Ingrum's commissions in this case.

In light of the facts presently set forth in the record and the controlling law regarding contract interpretation, the court finds as a matter of law that the clause "any amounts now or hereafter becoming due to BT from AE under the terms of this Agreement or otherwise" as used in the agreement's set-off

9

provision is ambiguous. Specifically, it is unclear whether the parties intended that provision to authorize Bottomline to withhold commissions from Ingrum if he should violate the terms of the covenant not to compete. And, in order to resolve the issue presented by that ambiguity, the court must attempt to discern precisely what the parties intended when they agreed to that set-off provision. R. Zoppo Co. v. City of Dover, 124 N.H. 666, 671 (1984) (When resolving an ambiguity in a contract, the court should consider "the situation of the parties at the time of their agreement and the object that was intended thereby, together with all provisions of their agreement taken as a whole."). That inquiry necessarily calls for the resolution of disputed material facts, thereby precluding the entry of summary judgment.

## Conclusion

For the foregoing reasons, it is apparent that there remain genuine issues of material fact concerning Bottomline's ability to withhold commissions allegedly due to Ingrum as a set-off against unliquidated damages flowing from Ingrum's alleged breach of the covenant not to compete. Accordingly, Ingrum's motion for partial summary judgment (document no. 8) is denied.

10

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

August 26, 1996

cc:  Donald J. Williamson, Esq.
     Andrew W. Serell, Esq.
     Kenneth J. Poole, Esq.